[L. A. No. 16272. In Bank.—June 30, 1938.]

WHITTIER MUTUAL ORANGE & LEMON ASSOCIA-
TION (a Corporation) et al., Respondents, v. AGRICUL-
TURAL PRORATE COMMISSION OF THE STATE
OF CALIFORNIA et al., Appellants.

U. S. Webb, Attorney-General, Walter L. Bowers and Alberta Belford, Deputies Attorney-General, and Edson Abel for Appellants.

Jennings & Belcher, Bruce McDaniels and Louis E. Kearney for Respondents.

LANGDON, J.—This is an appeal from a judgment of the trial court holding invalid the formation of a lemon prorate district under the terms of the Agricultural Prorate Act (Stats. 1933, p. 1969), as amended; Deering's General Laws 1937, Act 143a, p. 60). The nature of the act was fully considered, and its constitutionality upheld, in our prior opinion, *Agricultural Prorate Commission* v. *Superior Court,* 5 Cal. (2d) 550 [55 Pac. (2d) 495].

On March 28, 1935, a petition, signed by a number of persons seeking the institution of a system of prorated marketing of lemons grown in the state, was filed with the Agricultural Prorate Commission. After a hearing, the petition was granted, and a zone or district covering the entire state was formed, a prorate program was established, and defendant Shippey was appointed zone agent to administer the program. On May 8, 1935, this action was instituted by various lemon growers and shippers against the commission, its members and the prorate committee, to enjoin the enforcement of the act. A temporary injunction was granted by the trial court, whereupon an alternative writ of prohibition was issued by this court. Upon consideration by this court the act was held constitutional, but the cause was sent back to the trial

court for the determination of the question whether the petition for formation had been signed by the requisite number (two-thirds) of the lemon producers. (*Agricultural Prorate Commission* v. *Superior Court,. supra.*) In the subsequent trial, the record of which is quite voluminous, this issue of fact was tried, and the court gave judgment permanently enjoining defendants from enforcing the prorate program on the ground that the statutory requirements had not been followed. Defendants appealed. Since the constitutionality of the act has been fully settled by our prior opinion, we shall consider only the attack on the procedure taken under it.

 This attack centers around section 11, which provided that the petition shall be sufficient if signed by "two-thirds or more of the *producers* of the commodity named in the petition within the zone described *and* by the owners of two-thirds or more of the *producing factors* in said zone". (Subsequent amendments have changed this provision, but the above language · applied at the time the present district was formed.) A double requirement is. made by this section.: there must be the requisite number of individual lemon growers, i. e., the producers, and also the requisite number of owners of the units or factors of production. In other words, a large number of individuals who produced only a small amount of lemons could not force the institution of a prorate program; nor could a few large producers, controlling the major part of the production, do so against the wishes of the greater number of smaller producers. The act requires a concurrence of two-thirds of the producers, and of those persons who control two-thirds of the production. Plaintiffs contend, and the trial court found, that the petition was defective in both requirements.

 The first and major ground of invalidity found by the lower court is that the petition was not signed by the requisite number of owners of *producing factors*, the theory of the decision being that the petitioners failed to choose a proper factor. In this connection it may be observed that the term "producing factor" is not of fixed and certain meaning, and that various kinds of units of production, such as acreage, bearing trees, etc., could reasonably be considered to fall within its scope. It was intended, as already pointed out, to furnish a measure of production. The act, section 2, subdivision (h), provided at this time: "The term 'producing fac-

tor' means the unit of production specified in the petition.'' Any unit selected by the petitioners, which reasonably measures production, must be considered sufficient. In the instant case the unit chosen was ''a standard packed box of lemons'' of the previous season. The petition was filed in the early spring, before any substantial part of the new crop had been harvested, and the actual production of the previous season was taken as more satisfactory than a mere estimate of the new year's production. That the owners of more than two-thirds of the standard packed boxes of lemons produced in the previous year really represent approximately that quantity of the present year's production can hardly be successfully disputed, and the record does not contain any evidence tending to show that the unit was not, in fact, a fair one.

The sufficiency of the packed box of lemons as a producing factor was, indeed, declared in our prior decision. We said there (5 Cal. (2d) 585 [55 Pac. (2d) 495, 513]) : ''From the definition given in the act of the term, 'producing factor' as 'a unit of production', we think it well may mean some definite part of that which is produced, and that in specifying such unit of production as a packed box of lemons the petition was within and complied with the terms of the act.'' We also held in that opinion that the specification of the previous year's crop was a proper method of determining the production, since it offered definite and not uncertain data: '' . . . the plan adopted was fair and just to all growers. It worked for certainty and definiteness, and in most respects was preferable to a procedure depending upon the uncertain method of a mere estimate of what might be produced during the current year. This resort to the previous year's crop was only had for the purpose of fixing some basis upon which to institute proceedings for the formation of the district. The previous year's crop did not enter into the future acts of the committee in prorating crops thereafter to be produced and made the subject of proration. The proration of any future crop would be governed entirely by the amount of such crop and the individual production of each grower.''

Notwithstanding our expressions on this point, the trial court was of the opinion that the petition failed to comply with the law. In the prior hearing before this court, it was argued that a packed box of lemons is not a ''producing

factor", such as a tree or acre of land, but is a "produced factor", and cannot fulfill the statutory requirement. This insistence upon a strict and literal meaning, ignoring the broad statutory definition of the producing factor as a "unit of production", in an effort to defeat the purpose of the act, was rejected by our first decision. We again affirm the holding that a packed box of lemons is a unit which may measure the production of lemons, and though counsel have again argued the point, the lower court conceded that it was a closed issue. ■ But the court observed that our holding was ineffective because the statute required signatures of the *owners* of two-thirds of the producing factors in the *prorate district*. Obviously the bulk of the past season's production had been sold and shipped out of the state at the time the petition was filed. A few boxes remained unsold within the state, in storage with packing associations, but the court held that the evidence was insufficient to show the ownership of these boxes. Hence, the court concluded, there was no proof that the owners of the producing factors within the state at the time of the petition were the signers thereof.

At the outset it may be said that this objection is highly technical, and has no relation to the objects of the act. So far as the statutory purposes are concerned, the petition is in full conformity, for it is not denied that the producers of the major portion of the crop are seeking the adoption of a proration plan. Moreover, to adopt the theory of the plaintiffs would mean that the signers could be the owners of the small residue of lemons remaining unsold at the time of the petition, which would defeat rather than carry out the statutory aim. Inasmuch as the whole object of the choice of a particular producing factor is to see that it represents the production of the commodity, the statute can only be satisfied when a unit is chosen which does so. And there is no express statement therein that those producers, determined by the last season's production under the present plan, shall have actual possession or ownership of the individual units of production at the exact time of signing. The signers were then and are now the bulk of the lemon producers of the state. They were owners of more than two-thirds of the packed boxes for the previous year, and without doubt would produce and own more than two-thirds in the subsequent year. Under

these circumstances we think the statutory requirement was substantially fulfilled in this respect.

It is therefore unnecessary for us to consider at length the strong evidence produced by defendants to show that more than two-thirds of the small residue of unsold boxes left in the state at the time the petition was signed were actually owned by the signers.

The second ground of attack is that the prorate program is based upon the amount of fruit in *storage*, instead of on *production*, and that this violates the statutory requirements. The court below recognized that the storage count was perhaps the most effective means, and that it might be impracticable to prorate on the basis of harvesting, but it held, nevertheless, upon an analysis of the statutory provisions, that it compelled the latter and did not permit the former. The argument is that under the statute the grower may not harvest a commodity unless he has first secured a "secondary proration certificate", and that under the lemon proration plan he would not receive a secondary certificate until his fruit was harvested and placed in storage.

Here, again, it seems to us that a strained construction has been employed, without adequate consideration of the obvious purposes of the statutory language. Section 18 gives the committee power to determine the method and manner of prorating, and section 20 provides that secondary certificates "shall be used to control the time and volume of harvesting *or other preparation for disposal*". Section 20 then states: "It shall be unlawful for any commodity to be harvested, prepared for market and/or marketed unless and until there shall have been an appropriate secondary certificate issued therefor . . . " Bearing in mind the objective, namely, an effective and practical method of proration, we cannot ascribe to the legislature the absurd aim of preventing harvesting until a certificate is issued, but withholding a certificate until storage after harvesting. It is quite clear that a flexible authority was intended, to permit the granting of the certificates at any stage in the production of the particular commodity which would permit the most effective regulation. If, in the case of some commodities, the time of harvesting appears to offer the best opportunity to enforce the regulation, the proration plan could provide for secondary certificates to be issued at that time to control the "harvesting" (section 20). If, on the other hand, the time for effective control

was the time the crop was stored, the secondary certificates could be issued then, not to control the harvesting but to control the "other preparation for disposal". (Section 20.)

■ Where the plan requires the certificate prior to harvesting, it would be unlawful to harvest without it; but where the plan, as here, requires the certificate after storage and prior to marketing, it is lawful to harvest and store, but not to market without the certificate. In the present case the evidence shows that storage is the ordinary step which follows harvesting in the case of practically all the lemons produced. They are delivered to the place of storage for curing, washing, grading, etc., as well as to await the most favorable market, and though the act makes special provision for proration of the small portion of the crop which does not go into storage, the bulk of the crop is handled in this manner. To apply the proration plan, i. e., to make the marketing allotments, when practically the entire product is in conveniently located warehouses, with each grower's production measured and identified, is entirely reasonable and fully complies with the statutory provisions.

■ Moreover, the issue is completely set at rest by the 1935 amendment to section 18 and the enactment of a new section, 19.1, which provides: "Proration may be periodic or seasonal in character and may be based upon actual production, whether in storage or otherwise, or upon estimated production." This amendment, enacted after the formation of the district, but prior to the institution of the proration plan attacked herein, is clearly applicable to the present proceeding. (See *Dr. Miles Calif. Co.* v. *Sontag Chain Stores,* 8 Cal. (2d) 178 [64 Pac. (2d) 726].) Indeed, plaintiffs concede the applicability of the legislation of 1935 to the present proceeding, and contend that other changes in that year, now to be discussed, are also applicable.

■ We have already pointed out that under our prior decision and by the application of reasonable rules of construction, the standard packed box of lemons was a proper "producing factor". In 1935, section 2, subdivision (k), was amended to read: "The term 'producing factor' means the unit of one acre unless the commission finds a smaller unit is required . . . " Plaintiffs contend that this amendment nullifies the entire proceeding taken by the petitioners because the standard packed box of lemons is no longer a proper producing factor. But plaintiffs have ignored a substantial

difference between the two 1935 amendments mentioned, and their contention that if one applies, both must, is unfounded. The amendment authorizing proration based upon storage (see *supra*) has this effect: a proration zone or district was properly formed by compliance with the statutory requirements then in force; the committee then proceeded to institute a plan of proration for that zone; the plan would be valid if, at the time it was placed in operation, the law authorized it. Here, at the time the proration plan was to go into effect, based upon storage, its validity could rest upon the law as amended in 1935, then in force.

But the other 1935 amendment, changing the definition of "producing factor", relates to the requirements essential to the formation of the district or zone itself. The original petition for formation must be signed by owners of two-thirds of the "producing factors". In the present case it was so signed, as we have held; and the district was validly formed and prepared to function. As to its future operations, e. g., the institution of a proration program, and the allocation of marketing quotas, it would be governed by the law in force at the time it acted. But as to its past formation, no statutory change can be construed to operate retroactively so as to make this invalid. Where new districts are to be formed to control production in other commodities, the producing. factors chosen must come within the new legislation. But the present district, validly organized under existing law, was not affected by the changed requirements for the organization of new districts.

Plaintiffs also assert that the program approved would result in injustice to them. However, the trial court considered that the commission's contrary findings on this point were not open to question, in so far as the validity of the program was concerned, and this holding was manifestly correct.

No other points require discussion. The judgment is reversed.

Curtis, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.