**MUTUAL ORANGE DISTRIBUTORS et al. v. AGRICULTURAL PRORATE COMMISSION OF STATE OF CALIFORNIA et al.**

No. 564–J Civil.

District Court, S. D. California, Central Division.

Oct. 7, 1940.

Crump & Rogers, Guy Richards Crump, Maurice Rogers, and Emmet H. Wilson, Jr., all of Los Angeles, Cal., for plaintiffs.

Earl Warren, Atty. Gen., of California, Walter L. Bowers, Deputy Atty. Gen., and George E. Farrand, Edward E. Tuttle, and Stephen M. Farrand, all of Los Angeles, Cal., for defendants.

Before STEPHENS, Circuit Judge, and HOLLZER and A. F. ST. SURE, District Judges.

STEPHENS, Circuit Judge.

Plaintiffs, lemon growers in and shippers from the State of California, seek to restrain permanently the enforcement of a prorate lemon marketing program prescribed under the authority of the California Agricultural Prorate Act, Chap. 754, p. 1969, Cal. Stats. 1933, as amended, St. 1935, pp. 1526, 2087, hereinafter called the Act. They claim that the enforcement of the program would irreparably damage them and submit them to penalties should they violate it and would violate the commerce clause of the United States Constitution, article 1, § 8, cl. 3, and would deprive them of the equal protection of the laws as guaranteed by the United States Constitution, Amendment 14, and would violate the Sherman Anti-Trust Act, Act of July 2, 1890, c. 647, 26 Stat. 209, 15 U.S.C.A. §§ 1–7, 15 note.

The Prorate Act has been before the Supreme Court of California twice (Agricultural Prorate Commission of California v. Superior Court, 5 Cal.2d 550, 55 P.2d 495 and Whittier Mut. Orange & Lemon Ass'n v. Agricultural Prorate Commission, 11 Cal.2d 470, 80 P.2d 983), and this Court refused to hold the issues of this cause res judicata by reason of these decisions in its opinion reported in 30 F.Supp. 937.

The case was tried as to both facts and the law before Judges Stephens, C. J. and James and Hollzer, D. Js., under the authority of 28 U.S.C.A. § 380, and before decision Judge James met with a fatal accident. The case was subsequently submitted upon the record by stipulation to Judges Stephens, Hollzer and St. Sure, the latter a District Judge of the Northern District of California.

Since the Prorate Act is not assailed but the program only, it will not be necessary

to discuss the Act beyond saying that its avowed purpose is to prevent "The unreasonable waste of agricultural wealth occasioned by the harvesting, preparation for market and delivery to market of greater quantities of agricultural commodities than are reasonably necessary to supply the demands of the market * * *". St.Cal. 1935, p. 1527, § 1. Each violation of the Act and the program constitutes a misdemeanor. In April, 1935, the program complained of was provided whereby the quantity of lemons to be marketed in "primary trade channels"[1] at any given time is prorated among all growers of the State as one zone on the percentage that the lemons in storage of each grower bears to the total storage of lemons of all growers. The program does not purport to be a production control measure and it does not limit the production, harvesting or storing of lemons or the enlargement of lemon orchard acreage. No provision of the program affects the lemon except and until the fixing of the prorate percentage of the storage which shall go into the market as shall be determined under the authority of the program.

There is no profitable outlet for the sale of approximately 80 to 90% of the lemons produced in California and disposed of in fresh fruit trade channels, except in the other states of the Union and abroad, and practically all of the lemons used in the United States are grown in California.

It is claimed by plaintiffs and not denied by the defendants that the enforcement of the program would affect interstate and foreign commerce, and the issue between the parties is whether or not this effect is direct or indirect.

The principles underlying the cleavage between the parties here are succinctly put in Simpson v. Shepard, 230 U.S. 352, 399, 33 S.Ct. 729, 740, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151, Ann.Cas.1916A, 18: "The grant in the Constitution [the commerce clause of the Federal Constitution] of its own force, that is, without action by Congress, established the essential immunity of interstate commercial intercourse from the direct control of the states with respect to those subjects embraced within the grant which are of such a nature as to demand that, if regulated at all, their regulation should be prescribed by a single authority. It has repeatedly been declared by this court that as to those subjects which require a general system or uniformity of regulation, the power of Congress is exclusive." The opinion then discusses, upon principle, matters which affect interstate commerce in an indirect or unintentional manner: "In other matters, admitting of diversity of treatment according to the special requirements of local conditions, the states may act within their respective jurisdictions until Congress sees fit to act; * * *."

To sustain the position of defendants it must be determined that every point of the program which touches interstate commerce is one "admitting of diversity of treatment according to the special requirements of local conditions".

Upon pages 402 et seq. of 230 U.S., pages 741 et seq. of 33 S.Ct., 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151, Ann.Cas.1916A, 18, of the cited case, Mr. Justice Hughes thoroughly treats of this subject and recites a long list of "local" regulations which do affect interstate commerce but which nevertheless are indirect in their effect upon it. Within this list appear local pilotage and quarantine regulations which do not conflict with federal regulations, and which we refer to only as showing the general character of such permissible indirect regulation affecting interstate commerce. Many recent decisions relating to the enforcement of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., while not decisive of any issue in this case, do strikingly illustrate the point that, notwithstanding the local character of regulations and their indirect effect upon interstate commerce, the federal government can properly occupy this field.

The point of contact between the program and interstate commerce does not concern quantity of production or of harvesting or quality or grade or deceptive packaging of fruit or fruit pest control, all of which we perceive would be arguable as local and as "admitting of diversity of treatment". The contact point is not one of these or within the sphere of argument supporting these instances. The contact does not cushion upon a local regulation of any kind. Nothing in the program

---

[1] "Primary channel of trade" is defined by the Act, Sec. 2 (j), St.Cal.1935, p. 1527, as "that transaction in which the producer or his cooperative marketing association loses physical possession of the commodity through the sale thereof or other disposition commercially."

affects the handling of lemons in the least until the act of shipment is imminent. At that moment the program becomes fully effective. According to the judgment and permission of those administering the program, only a limited percentage of the produced lemons in the state, or all of the produced lemons in the state, or none of such lemons can be shipped. The fact that is considered in determining such action has nothing to do with local regulations, but has all to do with the state of the market in other States. A better illustration of a direct operation upon interstate commerce independent of local diversity of treatment could scarcely be given. See Grandin Farmers' Co-op. Elevator Co. v. Langer, D.C., 5 F.Supp. 425 for comprehensive discussion of the subject and for a full collation of authorities and for applicable quotations from them. The cited case concerns the attempt of the State of North Dakota to place a limited embargo upon the shipment of wheat out of the State. The decision was in a "three-judge case", and upon appeal to the United States Supreme Court was affirmed without opinion. 292 U.S. 605, 54 S.Ct. 772, 78 L.Ed. 1467.

See also Lemke v. Farmers' Grain Co. of Embden, 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458, a case in which the State of North Dakota sought to deny the privilege of engaging in interstate commerce except to dealers licensed by the State. In the opinion it is stated that the principles of local police powers have "no application where the State passes beyond the exercise of its legitimate authority, and undertakes to regulate interstate commerce by imposing burdens upon it." 258 U.S. page 59, 42 S.Ct. page 247, 66 L.Ed. 458.

In West v. Kansas Natural Gas Co., 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716, 35 L.R.A.,N.S., 1193, the constitutionality of an Oklahoma law prohibiting foreign corporations from building pipe lines across or along highways and transporting natural gas through them to points outside the state was attacked. The law permitted domestic corporations to transmit gas between points in the state, but prohibited them from delivering gas to corporations or persons engaged in transporting or furnishing gas to points outside the state. The Court held such an act not to be a conservation measure, but that it acts to take away from owners an attribute of property—the right to dispose of it. Gas reduced to possession belongs to its possessor and is his individual property and may be the subject of interstate commerce— "* * * no state can by action or inaction prevent, unreasonably burden, discriminate against, or directly regulate, interstate commerce or the right to carry it on." 221 U.S. page 262, 31 S.Ct. page 574, 55 L.Ed. 716, 35 L.R.A.,N.S., 1193. See also Foster-Fountain Packing Co. v. Haydel, 278 U.S. 1, 49 S.Ct. 1, 73 L.Ed. 147.

The West case, supra, brings us to a consideration of the oil conservation or prorate cases upon which defendants heavily rely. Champlin Refining Co. v. Corporation Comm. of Oklahoma, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403; Thompson v. Consolidated Gas Utilities Corp., 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510; Railroad Comm. of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368, June 3, 1940. All of these cases turn upon the character of the statutes as conservation measures, and they are distinguishable from the West case, supra. The State has a right to conserve its natural resources and the conservation acts are designed to act and do act upon oil and gas in their natural place. They prevent the drawing off of gas which actuates the oil, and they prevent enjoyment of the unlimited taking from the natural supply in a manner that is prejudicial to others owning wells which tap the general supply which in turn encourages wasteful operations. There is a wide difference upon principle between these cases and such cases as the Grandin, Lemke and West cases hereinabove adverted to and cited.

We are satisfied and hold that the necessary effect upon interstate commerce of the lemon prorate program if enforced would be direct and violative of the commerce clause of the United States Constitution, and as this conclusion is fatal to the lawful enforcement of the program, and since the plaintiffs themselves have devoted almost their whole argument to this issue, we see no useful purpose in examining the other phases of the case. Plaintiffs may draw findings of fact and conclusions of law in conformity with the expressions of this opinion.

It may be noted that the Congress already has enacted a comprehensive measure commonly referred to as the "Triple

A" Act, 7 U.S.C.A. § 601 et seq., and has extended its provisions through which the marketing of oranges and other fruits is controlled through proration. This regulation could of course be extended to lemons. There is in this case some argument to the effect that the federal government has already preempted the field by the Triple A Act. We do not pass upon that question.

The petition for a decree permanently enjoining the defendants from enforcement of the lemon prorate marketing program as hereinabove identified is granted.