[Civ. No. 2587.   Fourth Dist.—April 28, 1941.]

MARION MOSESIAN, Respondent, v. W. B. PARKER, as Director of Agriculture, etc., et al., Appellants.

Earl Warren, Attorney-General, and Walter L. Bowers, Deputy Attorney-General, for Appellants.

L. Kenneth Say for Respondent.

GRIFFIN, J.—This is an appeal from a judgment directing that a peremptory writ of mandate issue requiring respondent and appellant W. B. Parker, as Director of Agriculture of the State of California, to issue to the petitioner and respondent herein licenses to act as a produce dealer and broker under the provisions of chapter 6, division VI of the Agricultural Code.

The matter was presented to the trial court upon written stipulation and a transcript of proceedings had before the Director of Agriculture. On January 31, 1940, following a hearing before the Director of Agriculture, the licenses of the Moco Fruit Company, Inc., as a produce dealer and broker under chapter 6 of division VI of the Agricultural Code were suspended for violations of certain provisions of that chapter, in that such corporation failed and refused to pay producer creditors, being about 40 in all, for farm products in an amount exceeding $37,000. Mr. S. P. Mosesian was at that time the president and operating manager of, and owner of the controlling interest in the Moco Fruit Company, Inc., and at all times completely dominated its affairs, and the company was in fact his *alter ego*. Thereafter, he made applications for similar licenses as an individual, which applications, after hearing regularly had, were denied by the Director of Agriculture on July 16, 1940. Mosesian had been declared a bankrupt.

Thereafter, the petitioner herein, Marion Mosesian, his wife, filed applications on August 8, 1940, for similar licenses in her individual right, doing business under the firm name and style of Sun-Beam Fruit Company. No certificate to do business under this name was ever filed. A hearing was regularly had on these applications and the Director of Agriculture denied the same on August 22, 1940. This petition for writ of mandate to compel the Director of Agriculture to issue such licenses to her followed.

The evidence is not to any extent contradictory, and aside from the general propositions that the evidence is insufficient

to sustain certain findings and that the findings do not support the judgment, the other essential question sought to be determined upon this appeal is whether the Director of Agriculture may be compelled to issue licenses to a wife to engage in business as a produce dealer and broker where such licenses have been denied the husband for violation of the law above referred to. The evidence considered by the Director of Agriculture in denying the applications and by the trial court in considering the petition for a writ of mandate and in ordering that the permits issue, may be thus summarized: It is clear and undisputed that at all the times here involved petitioner was married and living with her husband. The record is wholly devoid of any showing that respondent had any *separate* property. It is admitted that she was not a "sole trader" and had made no attempt to operate as such. Her husband had gone through bankruptcy and had no money or property. According to petitioner, she borrowed $2,500 from a firm in New York to whom she intended to ship fruit. She obtained $1,000 from her sister-in-law on a note. She also borrowed from her brother on a note and also on a life insurance policy. These funds were deposited in a bank in the name of Sun-Beam Fruit Company, a fictitious name, where they were specifically made subject to withdrawal either by the wife *or by her husband,* and the written authorization in evidence provides that they and each of them "are hereby authorized to endorse for deposit or for encashment any checks and other items payable to the business organization as above named".

Respondent freely admits the previous violations of the provisions of the Agricultural Code on the part of her husband. Up until the time of the hearing on petitioner's applications for these licenses, what business was being conducted in the name of Sun-Beam Fruit Company was being conducted in the offices formerly occupied by S. P. Mosesian's Moco Fruit Company, with the same bookkeeper formerly employed by the latter company.

S. P. Mosesian claimed that he had no connection with the Sun-Beam Fruit Company; that his wife had never been active with him in the fruit business; that she had worked as office assistant for the Powers family, who were in the fruit business; that he had no arrangement with his wife other than to ship one crop of grapes; that he could not draw

checks without his wife's authorization; that he did not have any money invested in his wife's business; and that he had no share in the profits thereof; that he was packing a crop for one Massakian and it was being shipped to one Sakajian; and that the Sun-Beam Fruit Company was to obtain 27½ cents per box for packing the crop.

Marion Mosesian testified that she had nothing to do with her husband's fruit business in the past; that she had made the application in question because she had to make a living; that she had been forced to borrow money; that she had no understanding with her husband relative to which he would actually run the business; that she had no understanding or arrangement with her husband at all; that she did not intend to hire her husband to go out and buy fruit; that she might hire her husband as a plain foreman; that her husband would not dominate her business nor her business policies; that her funds on hand were funds which she had borrowed; and that she had a tentative deal to ship fruit to a New York receiver.

An affidavit of the district supervisor of the bureau was presented and considered by the Director of Agriculture. It alleges, upon information and belief, that the applications are not made by said applicant Marion Mosesian in good faith for the purpose of carrying on the business or businesses stated in the several applications; that applicant does not possess the financial or other responsibility required by law for carrying on the business or businesses stated in the several applications; that if the licenses as applied for were procured by applicant, said applicant would be intentionally guilty of fraud or deception in that the sole purpose of the applications now on file is to secure licenses for the actual benefit of the said S. P. Mosesian, husband of applicant; that the true and actual applicant, for all intents and purposes, is said S. P. Mosesian, and that therefore the license applications should be denied for the reasons set forth in the departmental order denying the license of S. P. Mosesian, as well as for the reasons set forth herein.

Petitioner concedes that all that is required of the Director of Agriculture is that he "must exercise his power under this section of the Agricultural Code in a reasonable manner", but she contends, however, that "if he does not, then he is subject to a writ of *mandamus* by the Superior

Court'', and in this connection she claims ''that there is not one scintilla of evidence contained in the whole matter that would even tend to cast any reflection whatsoever on the character, good faith, or responsibility of . . . the petitioner and respondent herein'', and that in view of the finding of the trial court upon the evidence submitted, this court must, under the decision of *Drummey* v. *State Board of Funeral Directors,* 13 Cal. (2d) 75 [87 Pac. (2d) 848], uphold the trial court's judgment. *Webster* v. *Board of Dental Examiners,* 17 Cal. (2d) 534 [110 Pac. (2d) 992], is also cited in support of this contention.

In the Drummey case, *supra,* it was said that the findings of the board in such a case, where formal hearings are held, should and do come before the courts with a strong presumption in their favor. It was also said, in ordering the board to reinstate the license after previous refusal of the board so to do and where the court *made no findings of fact* and the cause was tried on the record before the board, that if there was any substantial evidence found in the record to support the trial court's judgment that judgment must be affirmed. The case now under consideration can be differentiated from that case. In the instant case, findings were prepared by the court, based upon the same evidence taken before the Director of Agriculture. The evidence fully supported the finding of the Director of Agriculture and lacked substantial evidence to support the material finding of the trial court that the petitioner did satisfy the Director of Agriculture of her responsibility and good faith, and that her husband did not have control of and access to the funds obtained by her.

The Webster case (wherein the trial court upheld the order of the board), merely holds that where the evidence before the trial court in support of the order of suspension was of a substantial nature, an appellate court will not substitute its own conclusions for those reached by the trial court.

It is the general rule applicable to the issuance of a writ of *mandamus,* to furnish any basis for the relief sought, that the petitioner show that respondents are under some duty to do what the petition asks that they be required to do. (*San Diego Cotton Club, Inc.,* v. *State Board of Equalization,* 139 Cal. App. 655 [34 Pac. (2d) 749].) A writ of mandate may not issue to compel an officer or board to act

in any particular way except in the performance of ministerial duties, and never to control the exercise of discretion unless it has been abused. (*Doble Steam Motors Corp.* v. *Daugherty*, 195 Cal. 158 [232 Pac. 140]; *Morales* v. *Ingels*, 30 Cal. App. (2d) 182 [85 Pac. (2d) 907].)

We will therefore discuss the sufficiency of the evidence to support the court's finding and determination that it was untrue, as found by the department, "that from said hearing it appeared to respondents (appellants) that petitioner had no responsibility and did not in good faith seek to carry on the business stated in petitioner's applications; that it appeared from said hearing, and is a fact, that petitioner has no funds nor assets of her own with which to engage in such business, and that said S. P. Mosesian has full control of and access to all funds obtained by petitioner". We believe this finding of the trial court is lacking in substantial evidentiary support, without discussing the other contention of appellant that the department was fully and reasonably justified in denying petitioner's applications under the express authority of section 1269 of the Agricultural Code, i. e., "previous violation by the applicant or by any person connected with him or it of any of the provisions of this chapter shall be good and sufficient ground for denial of a license".

The court's finding and petitioner's statement that the petitioner's husband did not have control over the funds in the bank is contrary to the admitted facts and written authorization hereinabove mentioned.

Section 1263 of the Agricultural Code provides that "such applicant shall further satisfy the director of his or its character, responsibility, and good faith in seeking to carry on the business stated in the application".

The evidence is undisputed that at all of the times involved herein petitioner was married to S. P. Mosesian and that they lived together and were living together as husband and wife; she borrowed the money from friends and relatives and on her life insurance policy to commence and carry on these proposed businesses, and Mr. Mosesian testified that they had been living on part of this borrowed money. These borrowed funds were deposited in the bank as described. It was stipulated that petitioner did not make her applications for the licenses to conduct such businesses or occupations as a sole

trader under sections 1811–1821 of the Code of Civil Procedure. Whether the business of produce dealer and broker, in which petitioner seeks to engage, and the earnings therefrom would or would not become community property, depends largely upon the facts. (*Gray* v. *Perlis,* 76 Cal. App. 511 [245 Pac. 221].) Ordinarily, such businesses and the profits accruing therefrom, are and would be property acquired after marriage, and under sections 162–164 of the Civil Code would be community property.

In accordance with the provisions of sections 161a, 172 and 172a of the Civil Code, the respective interests of the husband and wife in community property are existing and equal, subject to the very dominant right of the husband to manage and control such property. The fact thus appears that if such licenses were issued to the petitioner herein to engage in the businesses mentioned, and such property were not her separate property (the record affirmatively shows it was not), her husband would not only have an equal and existing interest therein, but would have the complete management and control thereof, subject only to the particular restrictions on the disposition thereof set forth in sections 172 and 172a of the Civil Code.

It is a general rule that money borrowed on personal security by a husband or wife is community property. (*Moulton* v. *Moulton,* 182 Cal. 185 [187 Pac. 421]; *Estate of Ellis,* 203 Cal. 414 [264 Pac. 743]; 3 Cal. Jur. Supp., p. 535, sec. 47.)

It is clear from the evidence that petitioner had absolutely no financial responsibility. She had no funds or property of her own prior to the time she consummated the loans above mentioned. Her husband admittedly had none. Petitioner became liable on her notes to repay all of the sums she had borrowed and became liable to repay all that she had borrowed on her insurance policy. She had no assets over and above her liabilities. Therefore, petitioner showed no financial responsibility sufficient to allow her to engage in the business of purchasing the produce of the farmers with any assurance to them that she could pay for their products sold to her. The showing here made would not satisfy the clear intent of the statute with respect to petitioner's financial responsibility, and may result in the same disaster that confronted the creditors of her bankrupt husband.

The court's finding to the effect that petitioner did satisfy the director of her character, responsibility and good faith, and that her husband did not have control of and access to the funds obtained by her husband receives no sufficient support in the evidence and cannot be sustained.

■ The purpose of the provisions of the Agricultural Code above mentioned was primarily for the protection of the producers or growers of agricultural commodities, and to be sure that such producers shall be paid for their products by the dealer and broker. The statute is particularly concerned with the financial standing and management, and where such control and management of the funds and property are in the hands of the husband as here indicated, it would be an absurdity to grant such a license to the wife when the same had been denied the husband because of his previous failure to make such payment to producers.

To compel the director by *mandamus* to issue a license to a wife whose husband has just been denied one because of his violations under the circumstances existing here cannot be justified.

The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.