[Civ. No. 6617. Fourth Dist. Jan. 23, 1962.]

SAN BERNARDINO FIRE AND POLICE PROTECTIVE LEAGUE et al., Plaintiffs and Appellants, v. CITY OF SAN BERNARDINO et al., Defendants and Respondents.

402

Rose, Klein & Marias and Chapman & Sprague for Plaintiffs and Appellants.

Ralph Prince, City Attorney, and O'Melveny & Myers for Defendants and Respondents.

COUGHLIN, J.—The primary issue on this appeal concerns an interpretation of a section of the charter of the City of San Bernardino which attempts to provide a method of fixing the amount of salaries payable to employees of the police and fire departments of that city.

By declaration, in the nature of a preamble, the charter section in question, i.e., section 186,[1] states that it establishes "a basic standard for fixing salaries, classifications, and working conditions of the employees of the police and fire departments of the City of San Bernardino" and that the "Mayor and Common Council in exercising the powers and control over these departments vested in them by this Charter shall hereafter be guided and limited" by the provisions thereinafter set forth.

Paragraph "FIRST" of the section, which follows the foregoing declaration, contains a number of provisions:

(1) Creates designated "classes of positions";

(2) Directs that code or classification numbers, titles and salaries "for such classes of positions" shall be fixed as set forth in the section;

(3) Provides for and sets out seven such classes together with "titles" of the positions included within each class, which are given the. code or classification numbers "P-1 through P-7"; and also provides that each of the classifications P-1

---

[1]There is hereby established for the City of San Bernardino a basic standard for fixing salaries, classifications, and working conditions of the employees of the police and fire departments of the City of San Bernardino, and the Mayor and Common Council in exercising the powers and control over these departments vested in them by this Charter shall hereafter be guided and limited by the following provisions:

FIRST: CLASSIFICATION

The following classes of positions are hereby created in the Fire Department and Police Department of the City of San Bernardino, and the code numbers, titles, and salaries as hereinafter set forth are hereby established and fixed for such classes of positions. The letter "P" represents "Position," and the five steps in Positions 1, 2, and 3 being represented by the letters "a," "b," "c," "d," and "e" are: "a" designating the first six months of service in the respective departments, "b" designating the following eighteen months of service in the respective departments, "c" designating the third year of service in the respective departments, "d" designating the fourth year of service in the respective departments, and "e" designating the fifth and all subsequent years of service. Advancements in salary shall be made automatically step by step after each step of aggregate active service in the department in which the member is employed. From the effective date of this charter amendment, each person employed in the Fire Department and Police Department shall be entitled to receive for his services in his position the applicable respective rate or rates of compensation prescribed for the class in which his position is allocated. Additional titles may be established by the Mayor and Common Council but all regular employees of the Police and Fire Departments except clerical employees shall be placed in one of the following classes of position. Any new titles shall be placed in the classification having the most nearly equal duties and responsibilities.

through P-3 shall be further divided into five "steps," representing different lengths of service and given the code or classification designations (a), (b), (c), (d), and (e), for example, P-1(a), P-1(b), etc. (See footnote 1 for the adopted "Class of Position" Schedule);

(4) States that in such code or classification numbers the "letter 'P' represents 'Position' ";

(5) Authorizes the establishment of "additional titles," and in this sense uses the term "titles" synonymously with the term "positions";

(6) Directs that "any new titles shall be placed in the classification having the most nearly equal duties and responsibilities";

(7) Requires that all employees of the Police and Fire Departments, except clerical employees, shall be placed in one of the "classes of position" set forth in the schedule which is made a part of this paragraph.

(8) Provides that each person employed in these departments "shall be entitled to receive for his services in his position the applicable respective rate or rates of compensation prescribed for the class in which his position is allocated."

### CLASS OF POSITION

| CLASSIFICA-TIONS No. | TITLE | |
|---|---|---|
| | FIRE | POLICE |
| P1 (steps a, b, c, d, and e) | Fireman, Dispatcher, (formerly designated Fire Alarm Operator) | Patrolman, Assistant Humane Officer, Traffic Officer, License Inspector |
| P2 (steps a, b, c, d, and e) | | Juvenile Officer, Detective, Sr. Identification Inspector |
| P3 (steps a, b, c, d, and e) | Engineer | Sergeants, Humane Officer |
| P4 | Captains, Assistant Fire Prevention Eng. | Lieutenants |
| P5 | Battalion Chiefs, Drill Master, Fire Prevention Engineer, Master Mechanics | Captains, Supt. of Records and Identification, Supervising License Inspector |
| P6 | Assistant Chief | Assistant Chief |
| P7 | Chief | Chief |

Paragraph "Second," which is the real source of controversy in this action,

(1) Prescribes a standard by which the Mayor and Council shall be "guided and limited" in fixing the salaries payable to fire and police department employees;

(2) Directs that, at the beginning of each fiscal year the monthly salaries of employees whose positions are included in classification P-1, steps (a) through (e), shall be fixed "at an amount of not less than the average of the monthly salaries, including increased cost of living bonuses, and all other financial remuneration by whatever other name known, paid or approved for payment to employees of like, or the most nearly comparable position of the Police and Fire Departments of the Cities of Riverside, South Gate, Burbank, Long Beach, and Los Angeles" during the fiscal year in question; that the "salary paid in step 'a' shall be the same as the average of the starting salaries of the Comparable Positions in the five cities listed and the salary paid in step 'e' shall be the same salary as the average of the top salaries paid in the Comparable Position in the five cities listed"; and that the salaries paid in the intermediate steps shall be equalized; and

(3) Provides, in substance, that the salary payable to em-

---

SECOND: BASIC SALARY SCHEDULE

(a) On the second Monday following approval of this charter amendment by the State Legislature, the monthly salaries of employees of the San Bernardino Police and Fire Departments included in classification P1, steps "a" through "e" shall be fixed for the balance of the then current fiscal year, and thereafter the monthly salaries of said employees shall be fixed annually at the beginning of each fiscal year commencing on July 1, 1955 and annually on July 1 of each succeeding year, at an amount of not less than the average of the monthly salaries, including increased cost of living bonuses, and all other financial remuneration by whatever other name known, paid or approved for payment to employees of like or the most nearly comparable position of the Police and Fire Departments of the Cities of Riverside, South Gate, Burbank, Long Beach, and Los Angeles during the fiscal year (or portion thereof), commencing on said date. If any of these cities has a fiscal year starting on a date other than July 1 or on July 1 of the current year has not yet fixed the salaries for the following year, the salaries actually being paid in such city on that date shall be used as the salaries for that city in computing the average salary paid by the five cities. The salary paid in step "a" shall be the same as the average of the starting salaries of the Comparable Position in the five cities listed and the salary paid in step "e" shall be the same salary as the average of the top salaries paid in the Comparable Position in the five cities listed, and the salaries paid in steps "b," "c," and "d" shall be fixed at an amount which will cause employees in the San Bernardino Police and Fire Departments to advance from the starting step to the maximum pay step in approximately equal salary advances.

ployees whose positions have been placed in classification P-1 constitutes a basic salary, and the salary payable to employees whose positions have been placed in classification P-2 through P-6 shall be in amounts not less than certain designated percentages over and above the basic salary.

It is apparent that the charter section, when read as a whole, which we must do (*Select Base Materials, Inc.* v. *Board of Equalization*, 51 Cal.2d 640, 645 [335 P.2d 672]), imposes a limitation upon the exercise of the authority of the mayor and council to fix the salaries paid to policemen and firemen of the City of San Bernardino; by paragraph "FIRST" thereof, directs that various positions in the police and fire departments of that city shall be placed in designated classifications, and that each employee of those departments shall be paid the salary allocated to the classification in which his position has been placed; and, by paragraph "SECOND" thereof, prescribes a method to guide the mayor and council in establishing a base salary comparable to, but not less than the average of that paid to certain firemen and policemen by five designated cities.

The dispute at hand concerns the method adopted by the city council in establishing the basic salary for the fiscal years 1955-56 through 1958-59. The plaintiffs, individually and as representatives of all of the firemen and policemen of the City of San Bernardino, brought this action for the obvious purpose of obtaining a judicial interpretation of the charter section in question; contend that the method heretofore adopted does not follow the standard fixed by the charter; claim that if the proper method had been applied they would have been entitled to a greater wage, designating the same; and, in three separate counts, allege facts which they urge entitle them to a writ of mandate, ask for a declaration interpreting the charter section, and seek to recover the difference in wages which they claim is due them because the proper interpretation thereof was not applied by the council.

The evidence in this matter was presented by way of a stipulation of facts and the introduction of exhibits. The court determined that the method of computing the basic salaries which had been adopted by the city council was proper and decided in favor of the defendants. The plaintiffs appeal.

The pertinent parts of Paragraph SECOND, which designate the standard to be followed in fixing the amount of the salaries to be paid to employees included in classification P-1 direct

that it shall be "at an amount of not less than the average of the monthly salaries . . . paid . . . to employees of *like or the most nearly comparable position* of the Police and Fire Departments of the Cities of Riverside, South Gate, Burbank, Long Beach, and Los Angeles." (Italics ours.) An interpretation of the italicized phrase, particularly the meaning of the word "position" as used therein, is a prime subject for consideration on this appeal.

For the fiscal year 1958-1959, the positions, by title, included in classification P-1 were listed as fireman, dispatcher, patrolman, assistant humane officer, traffic officer, license inspector, and parking control officer. The latter position was created under the authority conferred by the charter provisions that "additional titles may be established" and was placed in classification P-1 pursuant to the requirement that "any new titles shall be placed in the classification having the most nearly equal duties and responsibilities." The duties and responsibilities of a parking control officer, as stated in the stipulation of facts, are "almost exclusively the issuing of citations for overparking in metered areas, and such employees do not have the power or duty to make arrests." In creating the position of parking control officer and placing it in classification P-1, the council determined that the duties and responsibilities of that officer were most nearly equal to those of fireman, dispatcher, patrolman, assistant humane officer, traffic officer and license inspector. There is no contention that its decision in the premises was the result of fraud or arbitrary action. Consequently, the determination made is beyond the scope of judicial review. (*City & County of San Francisco* v. *Boyd*, 22 Cal.2d 685, 690 [140 P.2d 666]; *Berkeley High School Dist.* v. *Coit*, 7 Cal.2d 132, 136-137 [59 P.2d 992]; *Nickerson* v. *County of San Bernardino*, 179 Cal. 518, 522 [177 P. 465]; *Lesem* v. *Board of Retirement*, 183 Cal. App.2d 289, 298 [6 Cal.Rptr. 608]; *Cobb* v. *Pasadena City Board of Education*, 134 Cal.App.2d 93, 96 [285 P.2d 41].)

Under the formula used by the city council to fix salaries for the fiscal year 1958-1959, it first determined the average salary paid by the five designated cities for each position, i.e., "title," included in classification P-1; then the average of these average salaries was determined; and the latter figure was accepted as the average salary paid by the guide cities to all persons included within classification P-1. The results obtained by an application of the foregoing formula, as ap-

pears from an exhibit in evidence which relates to employees in classification P-1, step (a), are charted in the following manner:

| | Los Angeles | Long Beach | Burbank | Riverside | South Gate | Average |
|---|---|---|---|---|---|---|
| Patrolman | 440 | 417 | 409 | 362 | 414 | 409 |
| Fireman | 440 | 417 | 409 | 362 | 414 | 409 |
| Dispatcher | 440 | 417 | ... | 362 | ... | 407 |
| Traffic Officer | 440 | 417 | 409 | 362 | 414 | 409 |
| Parking Control Officer | ... | ... | ... | 273 | ... | 273 |

Average ...................................... 381

In applying the formula thus used it was necessary that the council determine what positions held by employees in the police and fire departments of the guide cities were comparable to the positions included in classification P-1. In some instances these positions did not bear like titles. For example, it appears that the council determined that the positions in the five guide cities designated as fireman and hoseman were comparable to the position designated as fireman by the defendant city; the positions of fireman (dispatcher), fire alarm communciations technician and, in some instances fireman, were comparable to the position of dispatcher; the position of policeman was comparable to the position of patrolman; and the positions of policeman, patrolman and motorcycle officer were comparable to the position of traffic officer. No difficulty is incurred in the use of the formula applied by the council to the foregoing examples because the salaries of all of these positions were the same in each city. It will be noted that no attempt was made to consider the position of assistant humane officer or license inspector. In two instances duties similar to those discharged by a dispatcher were performed by persons who were not members of the fire department, and were designated "civilians."

The contentious difficulty in this case arises from the inclusion and consideration of the position of parking control officer. In substance, the council found that the City of Riverside alone had an officer with duties similar to those prescribed for such an officer by the defendant city. The compensation paid that officer by the former city was considerably lower than the compensation paid any of its other officers. In other cities either patrolmen or "civilians" performed the duties similar to those performed by the parking control officer, but

no consideration was given this fact in the formula used to apply the prescribed standard. The charter required the council not only to determine the salaries paid by the guide cities for like positions but, in the event there was no "like" position in such cities, to determine the salary paid by those cities to employees "of . . . the most nearly comparable position." Even if it be assumed that the basic salary formula applied by the council conformed to the standard prescribed by the charter, the omission in the application of that formula of a consideration of the salary paid to employees by the four guide cities, other than Riverside, who hold the most nearly comparable position to that of parking control officer, constituted a failure to apply the standard prescribed in the discharge of the duties imposed upon it by the charter or, stated otherwise, in the exercise of the authority conferred upon it to fix the salaries in question. It is obvious that the council gave no consideration to the salary paid by the four cities to employees of a position most nearly comparable to that of parking control officer.

 The city contends that the term "Position," as used in the charter provision requiring the council to determine "the average of the monthly salaries . . . paid . . . to employees of like or the most nearly comparable position of the Police and Fire Departments" of the five enumerated cities is synonymous with the term "classification" as used in the charter; that the council was required to determine the average salary paid to employees of the five cities in a classification like or most nearly comparable to the charter classification P-1. Even though this interpretation be accepted, it is difficult to conceive how it gives birth to the formula which the council used, and which resulted in determining the average salary paid by the five cities for each of several "titled" positions like or most nearly comparable to those included in classification P-1, and the averaging of these averages to obtain an "average" of the salaries paid by those cities to its employees in a classification like or most nearly comparable to the classification P-1. The attempt to obtain an average salary for the entire classification may be proper, but the means applied to attain this end were in derogation of the result sought. Determining the average of the salaries paid by the guide cities for each "titled" position contained in classification P-1; adding these amounts together and dividing by the number of "titled" positions considered would not result in an amount equal to

the average of the salaries paid to all employees whose duties were like or most nearly comparable to those included in Classification P-1. To adhere to the defendant's interpretation of the charter, the council, before taking the average of the salaries then paid by the five guide cities, must take several intermediate steps. First, it must determine what employees in each of the guide cities should be included in a classification like or most nearly comparable to classification P-1. Then it must determine the salary paid by each of those cities to those employees, as a class. The charter makes no provision for these intermediate steps or the method to be used in making the determinations required thereby. Nevertheless, if they are necessary to the result required by the charter, the authority to engage therein and to adopt a method of determination in the premises will be implied. (*Walker* v. *County of Los Angeles*, 55 Cal.2d 626, 635-636 [12 Cal.Rptr. 671, 361 P.2d 247] ; *Dickey* v. *Raisin Proration Zone No. 1*, 24 Cal.2d 796, 810 [151 P.2d 505, 157 P.2d 324] ; *California Drive-In Restaurant Assn.* v. *Clark*, 22 Cal.2d 287, 302-303 [140 P.2d 657, 147 A.L.R. 1028] ; *State Compensation Ins. Fund* v. *Riley*, 9 Cal.2d 126, 130-133 [69 P.2d 985, 111 A.L.R. 1503] ; *Skidmore* v. *County of Amador*, 7 Cal.2d 37, 40-42 [59 P.2d 818] ; *Crawford* v. *Imperial Irrigation Dist.*, 200 Cal. 318, 334 [253 P. 726] ; *Hornblower* v. *Duden*, 35 Cal. 664, 670 ; *Smith* v. *Mayor etc. of Sacramento*, 13 Cal. 531, 533 ; *Lavine* v. *Jessup*, 161 Cal.App. 2d 59, 65 [326 P.2d 238] ; *Miller* v. *Boyle*, 43 Cal.App. 39, 43 [184 P. 421].) Any decision made in the exercise of that authority would involve the use of discretion. As a consequence, the steps to be undertaken, the method selected, and the decision reached in the course thereof, in the absence of fraudulent or arbitrary action, would not be interfered with by the courts. (*California Drive-In Restaurant Assn.* v. *Clark, supra*, 22 Cal.2d 287, 302-303 ; *Ray* v. *Parker*, 15 Cal.2d 275, 307-310 [101 P.2d 665] ; *Child* v. *Warne*, 194 Cal.App.2d 623, 634 [15 Cal.Rptr. 437] ; *Carrier* v. *Robbins*, 112 Cal. App.2d 32, 35 [245 P.2d 676] ; *Monahan* v. *Department of Water & Power*, 48 Cal.App.2d 746, 753 [120 P.2d 730].)

The plaintiffs contend that Paragraph SECOND of the charter section requires the council to fix their salaries at the average of the monthly salaries respectively paid by the five enumerated cities to their employees who hold positions like or most nearly comparable to the positions of patrolman and fireman ; that the term "Position" as used in that part of the

charter section prescribing the standard in question refers to the position of patrolman and fireman; and strenuously object to the consideration given by the defendant city to the position of parking control officer. They support their contention by reference to the fact that the position of parking control officer was not in existence at the time the charter section was adopted; that employees in the positions of patrolman and fireman numerically predominate the positions included in classification P-1; that in the city of San Bernardino there were 172 employees with the title of either ''patrolman,'' ''traffic officer,'' ''fireman'' or ''dispatcher,'' whereas there were only five such employees with the title of ''parking control officer''; that in the City of Riverside there were 80 patrolmen and 56 firemen, or a total of 136 positions, all of which were paid the same basic wage, whereas there were only five parking control officers who were paid a lesser wage; that in the other cities the parking control duties were performed by patrolmen or by persons who were not employees of the police department; that, excluding parking control officers, the number of employees in the police and fire departments in the five guide cities, whose duties were like or comparable to those of patrolman, fireman, traffic officer and dispatcher in the defendant city, totalled 6,608, whereas the total number of employees in these cities whose positions were like or comparable to that of parking control officer were only five, i.e., those in the City of Riverside; that although the salaries paid to the aforesaid 6,608 employees varied from city to city, in the city which employed them they were paid pursuant to the same salary scale, whereas the salary paid parking control officers, in the only city having such, was considerably below the salary paid to other employees of the police and fire departments of that city; that, nevertheless, the salary paid the position of those five employees was considered as a unit and added to the average salary paid by all the guide cities to each of four other positions, considered as individual units, and the total thereof was divided by five, i.e., the number of positions considered, to produce the figure representing the amount of the average of the salaries paid by the guide cities, which was used to fix the basic salary prescribed by the charter section; and, that the formula used by the defendant city gave undue weight to the salary paid the parking control officers of the City of Riverside. The arguments thus presented do not support the interpretation urged by the plaintiffs, although, in some meas-

ure, the facts they cite afford the basis of an interpretive factor, i.e., that, where construction is necessary, statutes should be interpreted so as to produce a result that is reasonable. (*Metropolitan Water Dist.* v. *Adams,* 32 Cal.2d 620, 630 [197 P.2d 543] ; *Dickey* v. *Raisin Proration Zone No. 1, supra,* 24 Cal.2d 796, 812.)

In support of their position the plaintiffs also argue that the charter section in question is in the nature of a minimum wage law. The argument thus presented does not support their interpretation, and is of no assistance in the determination at hand.

In their briefs, the plaintiffs present three "other possible methods of averaging," in addition to that used by the defendant city, each of which, when applied to the data at hand, would result in a higher wage than that fixed by the council. They state that either of these methods might form the basis of this court's decision, "assuming neither appellants' nor respondents' formula is correct." The presentation of such possibilities emphasizes the existent uncertainty in the charter section. On the other hand, an analysis of each of them indicates their inapplicability. Each ignores the fact that the standard prescribed by the charter requires the council to determine "the average *of* the monthly salaries . . . paid . . . to employees of like or the most nearly comparable position" of the five enumerated cities (italics ours) ; not the average salaries paid to those employees, but the average of the five cities' salaries ; and that a condition precedent to the perfection of any formula which will effect compliance with this standard is a determination respecting the meaning of the phrase "like or the most nearly comparable position."

A statute should be construed to the end that it may be given effect rather than invalidated. (*King* v. *Mortimer,* 83 Cal.App.2d 153, 160 [188 P.2d 502].) The uncertainties highlighted by the plaintiffs' referral to several possible methods of averaging under the formula used by the defendant city indicates the invalidity of the charter if interpreted so as to result in the use of such a formula. Under the foregoing rule such an interpretation gives way to one which does not involve uncertainty. The fundamental rules of construction applicable to the case at bar are stated in *Select Base Materials, Inc.* v. *Board of Equalization, supra,* 51 Cal.2d 640, 645; require the court to "ascertain the intent of the Legislature so as to effectuate the purpose of the law" (*ibid.*) ; direct that

"every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect" (*Stafford* v. *Los Angeles etc. Retirement Board*, 42 Cal.2d 795, 799 [270 P.2d 12]); and limit the consideration given to the phraseology of a statute to the end that its purpose will not be sacrificed to a literal construction of any part thereof. (*Select Base Materials, Inc.* v. *Board of Equalization, supra*, 51 Cal.2d 640, 645.)

The trial court accepted the interpretation urged by the defendant city, i.e., that the term "position" as used in the controversial charter phrase under consideration means Position—1, i.e., classification P-1. We are in accord with this conclusion. Paragraph FIRST of section 186, which deals with the classification of employees, states that the "letter 'P' represents 'Position.' " The whole tenor of the charter section is founded on the premise that all of the employees included in a particular class will receive the same salary, regardless of the title under which they are employed, and that the amount of the salary paid to them shall be based on the amount of the salary paid to employees performing like services in the five enumerated cities. It is expressly stated that "each person employed in the Fire Department and Police Department shall be entitled to receive for his services in his position the applicable respective rate or rates of compensation prescribed *for the class* in which his position is allocated." (Italics ours.) Thus, a fireman, policeman, assistant humane officer, license inspector and parking control officer are entitled to the same salary. If the amount of this salary is to be based on that paid for comparable services by the five cities, which is the obvious purpose of paragraph SECOND, it is necessary that a determination be made respecting the amount of the salaries paid by those cities to all such employees as a group. Thus the reference in that paragraph to "employees of like or the most nearly comparable position" reasonably refers to employees whose duties bring them within a classification like or most nearly comparable to those in Position 1. The same context must be ascribed to that part of paragraph SECOND which provides that: "The salary paid in step 'a' shall be the same as the average of the starting salaries of the Comparable Position in the five cities listed." If the term "Position" as used in these provisions were interpreted to mean "titled" position, i.e., the position of fireman, dispatcher, patrolman, assistant humane officer, etc., and the average of the salaries paid by

each of the five cities for each of these positions were different, the employees holding such positions in the City of San Bernardino would receive different salaries, contrary to the express requirement set forth in paragraph FIRST.

The plaintiffs also contend that the city council further failed to follow the charter provisions with respect to the manner of fixing their salaries because it did not take into consideration certain "fringe benefits," such as longevity and proficiency payments, received by employees in some of the guide cities. Paragraph SECOND provides that the basic salary shall be fixed at an average of the salaries paid by the five enumerated cities "including increased cost of living bonuses, and all other financial remuneration by whatever other name known." Thus, the charter expressly requires the city council, in determining the amount of the salaries paid by the guide cities, to consider so-called "fringe benefits." On the other hand, the manner of such consideration and the effect thereof upon the finding by the council, under our interpretation, is subject to an exercise of discretion vested in the council in applying the prescribed standard.

We conclude that the charter requires the mayor and council to fix the salaries of the San Bernardino Police and Fire Department employees, who are included in the classification designated "Position 1," at an amount not less than the average of the salaries paid by the five guide cities to employees in their police and fire departments whose duties and responsibilities are like or most nearly comparable to those of the San Bernardino employees included in that classification, i.e., "Position 1." To the extent that the charter thus prescribes a standard by which the authority and duty to fix salaries may be exercised, it measures the power of the mayor and council in the premises, and adherence to this standard may be effected through judicial control. (*Walker* v. *County of Los Angeles, supra*, 55 Cal.2d 626, 635-636; *Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303, 315 [144 P.2d 4]; *Brock* v. *Superior Court*, 11 Cal.2d 682 [81 P.2d 931]; *Agricultural Prorate Com.* v. *Superior Court*, 5 Cal.2d 550, 583 [55 P.2d 495]; *Allen* v. *Bowron*, 64 Cal.App.2d 311, 312 [148 P.2d 673]; *Agricultural Prorate Com.* v. *Superior Court*, 31 Cal.App.2d 518, 521-523 [88 P.2d 253]; *cf. San Ysidro Irr. Dist.* v. *Superior Court*, 56 Cal.2d 708, 719 [16 Cal.Rptr. 609, 365 P.2d 753]; *Whittier etc. Assn.* v. *Agricultural P.*

*Com.,* 11 Cal.2d 470 [80 P.2d 983].) On the other hand, the action of the mayor and council taken pursuant to the prescribed standard involves the exercise of legislative and discretionary action which, unless fraudulent or arbitrary, is not subject to judicial review. (*Ferrante* v. *Fish & Game Com.,* 29 Cal.2d 365, 374 [175 P.2d 222] ; *City & County of San Francisco* v. *Boyd, supra,* 22 Cal.2d 685, 690-692; *Cranford* v. *Jordan,* 7 Cal.2d 465, 467 [61 P.2d 45] ; *Nickerson* v. *County of San Bernardino, supra,* 179 Cal. 518, 522; *Maxwell* v. *Civil Service Com.,* 169 Cal. 336 [146 P. 869] ; *Lavine* v. *Jessup, supra,* 161 Cal.App.2d 59; *Cobb* v. *Pasadena City Board of Education, supra,* 134 Cal.App.2d 93, 96 ; *Carrier* v. *Robbins, supra,* 112 Cal.App.2d 32, 35; *cf. Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 636-639.) A preliminary essential to the computation prescribed by the charter, which will result in an average of the salaries paid by the five guide cities, is a determination of the amount of the salaries paid by each of these cities to their police and fire department employees whose duties and responsibilities are like or most nearly comparable to those of the San Bernardino employees who have been placed in the charter classification "Position 1." This is a fact-finding function which precedes legislative action. (*Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 635 ; *Parker* v. *Riley,* 18 Cal.2d 83, 91 [113 P.2d 873, 134 A.L.R. 1405] ; *Vita-Pharmacals, Inc.* v. *Board of Pharmacy,* 110 Cal.App.2d 826, 831-833 [243 P.2d 890]) ; involves an exercise of discretion ; and the method of its discharge as well as the decision reached, in the absence of fraud or arbitrary action, will not be interfered with by the courts. (*City & County of San Francisco* v. *Boyd, supra,* 22 Cal.2d 685, 690-692 ; *Carrier* v. *Robbins, supra,* 112 Cal.App.2d 32, 35; and other cases heretofore cited.)

In applying the views heretofore expressed to an adjudication of the issues presented through the causes of action alleged in the plaintiffs' complaint, we are confronted with the same difficulties which confronted the trial judge, as disclosed in an ably prepared and thoroughly considered memorandum opinion filed by him. Essentially, the plaintiffs seek an interpretation of the charter, a direction to the mayor and common council of the defendant city to conform their action in the premises to this interpretation, and the recovery of allegedly unpaid salaries, i.e., salaries which they claim they would have received if the interpretation in question had been

followed in the adoption of previous salary ordinances. Mandamus is a proper remedy to compel a mayor and city council to perform their charter-prescribed duties. (*Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 639; *Leftridge* v. *City of Sacramento,* 59 Cal.App.2d 516, 525 [139 P.2d 112].) Where these duties are continuing ones, the writ may be directed to future action in the premises. (*McAlpine* v. *Baumgartner,* 10 Cal.2d 409, 413-414 [74 P.2d 753].) As an incident to such relief it is necessary that the court determine the nature and extent thereof. In the case at bar this determination involves an interpretation of the charter. Insofar as the first cause of action in the plaintiffs' complaint sought to accomplish the foregoing purpose, it was meritorious. In other respects, as hereinafter will be noted, it was without merit. As the interpretation of statutes is a proper matter for declaratory relief (*Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 636-637; *Hoyt* v. *Board of Civil Service Comrs.,* 21 Cal.2d 399, 401 [132 P.2d 804]; *Wilson* v. *Los Angeles County Civil Service Com.,* 106 Cal.App.2d 572 [235 P.2d 620]), the plaintiffs' second cause of action, i.e., that requesting such relief, authorized the trial court to interpret the disputed provisions of the charter section in question, and adjudicate an obviously existing controversy.

However, insofar as the first cause of action, i.e., the application for a writ of mandate, sought recovery of the differences between the amount of salaries previously paid and the amount which it was claimed should have been paid if the charter-prescribed standard for fixing the same had been applied, it was without legal foundation for two reasons, as pointed out by the trial court, i.e., (1) there was neither pleading nor proof of an available fund from which such salaries could be paid, which fact is a condition precedent to the issuance of a writ compelling payment by a public official (*Tevis* v. *City & County of San Francisco,* 43 Cal.2d 190, 200 [272 P.2d 757]), and (2) mandamus will not issue to direct a city council with respect to the manner in which it should perform, or the decision it should reach in the discharge of a function involving the exercise of discretion. (*Carrier* v. *Robbins, supra,* 112 Cal.App.2d 32, 35; *Leftridge* v. *City of Sacramento, supra,* 59 Cal.App.2d 516, 525-526; *Mosesian* v. *Parker,* 44 Cal.App.2d 544, 548 [112 P.2d 705]; *Morales* v. *Ingels,* 30 Cal.App.2d 182 [85 P.2d 907].) Under

our interpretation of section 186, preliminary to making the computation required by the charter, i.e., an average of the salaries paid by the guide cities to employees whose duties and responsibilities are like or nearly comparable to those of the employees of the defendant city placed in the classification Position-1, the mayor and council must determine the amount of the salary paid, as a single unit, by each of said cities to said employees. The manner by which this determination may be accomplished and the ensuing decision in accord with the rule heretofore mentioned involve the exercise of discretion and are not subject to judicial control. For like reasons, relief under the third cause of action, i.e., for allegedly unpaid salaries, also must be denied. The salaries payable to the plaintiffs have not been fixed at any amount in excess of that which has been paid to them, therefore, no excess is payable. The alleged excess is based on contemplated action by the mayor and council in the exercise of their discretionary authority pursuant to the standard prescribed by the charter as judicially interpreted in this action. Obviously no cause of action exists to collect these undetermined amounts. Those parts of the judgment denying the plaintiffs' claim for allegedly unpaid salaries was proper.

It should be noted also that any writ of mandate issuable herein should be directed only against the mayor and common council; that any judgment for declaratory relief involves a controversy only between the plaintiffs and the defendant city and its mayor and common council; and that the judgment herein properly was rendered in favor of the other defendants on all issues.

Those parts of the judgment appealed from which deny a writ of mandate to compel the defendants to pay the plaintiffs' claim for allegedly unpaid salaries, and which deny recovery of damages by the plaintiffs on account of such allegedly unpaid salaries, as set forth in their third cause of action, together with all other parts of the judgment in favor of the defendants other than the City of San Bernardino, its mayor and common council, are affirmed. Those parts of the judgment in favor of the City of San Bernardino, its mayor, and common council, which deny declaratory relief and which deny a writ of mandate to compel the said mayor and common council, in the future discharge of their obligations, to fix the salaries of the employees of the police and fire departments of the City of San Bernardino in accord with the standard pre-

scribed by the charter as interpreted by this court, are reversed with instructions to enter judgment on these issues in favor of the plaintiffs in accord with the views expressed in this opinion.

Neither party will recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.