[Civ. No. 21759.   Second Dist., Div. One.   June 4, 1958.]

MORRIS LAVINE, Appellant, v. ROGER JESSUP et al.,
Respondents.

Morris Lavine, in pro. per., for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), Iver E. Skjeie, Deputy County Counsel, and William J. Cusack for Respondents.

LILLIE, J.—The plaintiff here appeals from a judgment of dismissal entered after the sustaining of demurrers, and from an order striking the fourth and last amended complaint. The original complaint bore the title, ''Taxpayer's Suit for Diversion and Waste of Public Funds; Conspiracy to Damage; Conspiracy to Defraud; Negligence in Public Office; Conversion.'' The third and fourth amended complaints charged fraud and misrepresentation, gross negligence, conspiracy, intentional and wilful breach of statutory duty and delay in building a county courthouse; and sought to have the court declare a constructive trust of public monies collected from public properties by defendants Briggs and Civic Center Auto Parks.

The present controversy emanates from an action of the Board of Supervisors of Los Angeles County changing the location of the county courthouse from its first designated site on Temple Street to First and Hill Streets. It is claimed that this relocation was effected after the supervisors had wastefully expended $2,225,086.61, including planning, architects' fees and other expenses, for the Temple Street site. Plaintiff also complains of the board's action in leasing the original site after it had been acquired by the county to certain other defendants for use as a parking lot operated for profit.

It is appellant's contention that not one but several good causes of action have been stated in the fourth amended complaint and that it was error to dismiss the action. The several counts and amendments are based upon various legal concepts, but all seek to predicate liability upon the above facts. There is no particular controversy with reference to the various record steps which were taken in choosing and relocating the courthouse site. Appellant does, however, seek to make use of certain alleged inferences and conclusions which he claims to be indicative of misfeasance or malfeasance on the defendants' part.

Appellant claims his capacity to sue is derived from the fact that he is a taxpayer bringing the action on behalf of himself and all other taxpayers. He is also an attorney at law and submits that the defendants owed a duty to furnish proper courthouse facilities for judges, lawyers, litigants and the public.

A reading of the allegations contained in the third amended complaint discloses the following specified causes of action: (1) intentional breach of statutory duty and resulting damage to the taxpayers; (2) wilful neglect of public mandatory duty to build a courthouse; (3) intentional gross negligence in performance of public mandatory duty and failure to accord taxpayers due process by notice and hearing in the selection of a courthouse site; (4) fraud and misrepresentation by public officers aided and abetted by the parking lot defendants in selection and abandonment of the Temple Street site and resulting damage to taxpayers; (5) restitution of public monies wasted by defendants' actions; (6) to declare and impress a trust on the defendants' private property; (7) to declare the rights and duties of defendants in connection with the courthouse site; (8) to prevent impairment of obligation of contract in violation of article I, section 10 of the United States Constitution, and to recover damages for the waste of

taxpayers' money and property without due process of law; (9) injunction; (10) conversion and misappropriation of public funds in connection with abandonment of the Temple Street site; (11) prayer for a bill of peace and application of estoppel by judgment; and (12) for damages in the alternative and punitive damages.

Plaintiff's fourth amended complaint sought to amend the first cause of action by asking for damages for intentional and wilful breach of statutory duty and for delay in building the courthouse, and asked the court to declare a constructive trust of all monies collected from public properties, namely the income received from the Temple Street parking lot.

As a basis for plaintiff's alleged right of action, it is asserted that the supervisors are trust officers having the duties and liabilities of trustees; that there has been a breach of mandatory duty in the use of courthouse property for a private parking lot; that the defendants have violated the due process and impairment of contract provisions of the United States Constitution and have intentionally and/or negligently wasted the taxpayers' money. Not only are the defendants alleged to have breached statutory ministerial duties but they are also charged with conspiracy and "acts of oppression, fraud and malice, both express and implied," justifying an award of punitive damages.

The respondents argue that in the complaint as finally amended appellant has included no allegation of any act, official or otherwise which (1) was not authorized by law; (2) did not follow prescribed modes; (3) constituted an illegal expenditure of funds; or (4) which was in any way wrongful or fraudulent. They also contend that appellant has, by a failure to discuss such matters, waived and abandoned any error in the rulings of the trial court. As pointed out by respondents, demurrers, both general and special, had been filed which challenged such vital matters as plaintiff's legal capacity to sue; improper joinder of actions and a failure to separately state various causes of action; misjoinder of parties defendant; lack of jurisdiction over the person of the defendant William A. Smith, deceased; uncertainty; and the statute of limitations.

Fundamental is the principle that a reviewing court cannot be expected to prosecute an independent inquiry for errors, but will only notice those assignments properly brought to its attention. (*Philbrook* v. *Randall*, 195 Cal. 95, 104 [231 P. 739].) The basic reason for this rule is obvious since all

presumptions and intendments must be indulged in favor of the judgment or order appealed from.

It is indeed problematical whether the appellant has sufficiently complied with the principle just stated. In some instances important matters, challenged by demurrer or otherwise, have received little or no substantial discussion or answer at appellant's hands; in others there has been no more than a dogmatic assertion or a resort to unamplified conclusion. In certain instances there has been nothing more substantial than a generalization which seems to assume the existence of the very facts upon which any cause of action must rest. This is neither good pleading nor is it what the opposing parties have a right to expect.

Perhaps appellant may have answered some of his attacks by inference, if not by direct statement. The charge of uncertainty in the complaint, in itself a serious charge in the present case, may perhaps be deemed answered by appellant's general assertion of the existence of one or several causes of action and his amplification of this theme. The matter, however, is not free from doubt.

It is true, as stated by the court in *Kauffman* v. *Bobo & Wood*, 99 Cal.App.2d 322, at page 323 [221 P.2d 750], that: ''pleadings and amendments thereto should be allowed and construed liberally with the object of affording every litigant his day in court and to render substantial justice between the parties.'' By way of the many amendments, appellant has been accorded this very right.

Notwithstanding the fact that there may well have been at least a technical abandonment or waiver of matters not discussed, nevertheless appellant will be given the benefit of the doubt so that the merits of the appeal may be considered. This leads to a survey of the complaint in its final amended forms, and to the conclusion that no cause of action has been stated therein.

It is axiomatic that the title or label which embellishes a pleading does not determine the nature of the action therein; its legal effect depends upon the allegations set out. (*Shimmon* v. *Moore*, 104 Cal.App.2d 554, 556 [232 P.2d 22].) Quite as elementary is the proposition that pleadings must be read and construed as a whole. And, while a liberal interpretation is permitted by section 452 of the Code of Civil Procedure, yet it is also true that a pleading is to be construed most strongly against the pleader, and in the absence of a contrary allegation, no intendment can be indulged in that the pleader

has not stated his case as strongly as it is possible to do. (*Sca-fidi* v. *Western Loan & Bldg. Co.*, 72 Cal.App.2d 550, 571 [165 P.2d 260].) Known to every lawyer and needing no citation of authority these fundamental principles are nevertheless of importance in the present controversy, and especially so where, as here, the pleadings are voluminous in character.

█ The respondents readily concede, as indeed they must, that in a proper case trustees may be held liable for damage occasioned by their activities and that county supervisors are public trustees. In respect to their obligation to build a courthouse, the Supreme Court in *County of Los Angeles* v. *Byram*, 36 Cal.2d 694, stated at page 699 [227 P.2d 4]: "There is no doubt that the duty of providing adequate quarters for courts is mandatory, explicit and imposed by law on the county. It has no choice in the matter." However, the court continued: "Such state law leaves to the boards of supervisors to determine, in each case, what is required to constitute 'suitable quarters.'"

█ While this basic obligation is clearly recognized it does not follow that the supervisors were under duty to build a courthouse at any particular location, nor does there appear to be any prohibition against changing the building site once acquired and selecting one deemed more appropriate. The very authority to build carries with it the necessarily implied power to exercise discretion in the manner of building and in the selection of a proper site. It is difficult to imagine how a board of supervisors could efficiently act without such discretionary power.

In *Simpson* v. *Hite*, 36 Cal.2d 125, 130 [222 P.2d 225], the Supreme Court, in discussing this matter, said: "It seems obvious beyond the reach of serious argument that the board of supervisors cannot perform the duty of providing 'suitable quarters' for the courts without selecting and designating the sites of the buildings to house the courts, as well as the character and size of the buildings. The determination of what is 'suitable' . . . necessarily includes the selection of a site. . . ."

The court, in the earlier case of *Nickerson* v. *County of San Bernardino*, 179 Cal. 518 [177 P. 465], one of many cases expressing the same idea, held: "All these matters (purchase of land for a hospital site) were committed by the statute solely to the board, and their determination involved both legislative action and the exercise of discretion, neither of which was subject to review or control of any court. Whether,

in the exercise of legislative powers, a board acts wisely or unwisely is no concern of the courts.''

■ Whatever the terminology employed in the various complaints, appellant's purported cause of action is predicated basically upon the supervisors' act in changing the courthouse location and the subsequent use of the site for a parking lot. But the authorities cited by him do not support appellant's contentions, nor do they furnish a basis upon which to predicate any legal cause of action. Such cases either deal with fundamental concepts about which there can be no controversy or they involve factual situations foreign to those set up in appellant's pleadings.

Reason supports the proposition that officials should be free from the harassing and intimidatory effect which the constant threat of actions to impose civil liability would constitute. From this stems the long-established doctrine of immunity for actions involving an exercise of judgment and discretion.

That supervisors, like other mortals, may act inadvisedly and that they are capable of committing serious errors which result in loss to public or private interests cannot be doubted. If such has been the case in respect to the supervisors' action in changing the courthouse site, and if money has been wasted, it should be borne in mind that such losses occur in private as well as public affiairs. They do not, however, in and of themselves necessarily give rise to a cause of action. And so, appellant's allegations in respect to defendants' unwise actions resulting in the expenditure of much money do not supply the requisite material for a cause of action. This is more particularly true since these officials are clothed with a broad discretion in reference to their decisions.

In considering the propriety of the change of location it seems not unreasonable to consider that, due to a change of conditions, a board of supervisors might find it advisable to alter its original decision in respect to a courthouse site. Appellant himself has even suggested a plausible reason for a change by alleging that during the period in question Los Angeles County had experienced a great increase in population with a corresponding increase in court business. But regardless of the reason, no abuse of discretion has been pointed out save by innuendo.

It seems obvious that such a discretionary power did not and could not fully expend itself with the original decision. In the selection of a site, being in the first instance a discretionary matter, such power necessarily includes the dis-

cretion to relocate and reselect a new site where such action is deemed necessary. There is no reason why supervisors or other officials, not otherwise restricted by law, should be tied down by a restriction which would render them powerless to act in the best interests of the public.

There is, of course, a presumption of the regularity of official conduct prescribed by section 1963, subdivision 15, Code of Civil Procedure. The appellant's complaint in its varied forms seems not to fully recognize the importance of this presumption and the corresponding duty of definitely alleging how and in exactly what manner the alleged facts rebut the existing presumption of regularity.

The case of *Curtis* v. *City of Boston,* 239 Mass. 401 [132 N.E. 181], in this respect parallels the instant one. With approval of the police commissioner, a site for a police station had been chosen and acquired. Thereafter, war conditions had rendered it inadvisable to build. It was held that the commissioner was not bound by the previous designation when he later determined that a greater area was necessary. The reviewing court, at page 184, said: "A long time has since elapsed. The present requirement of the police commissioner must be presumed to be founded upon changed conditions rendering imperative larger accommodations." Although factually different from the instant controversy, the fundamental principle is clearly applicable.

Nor does the pleader make out a case by stressing the later use of the original courthouse location as a parking lot. Having spent much money in acquiring the original location, the county officials, after deciding upon the change, may have sought to recoup the losses by leasing the property for parking purposes. Again the matter of discretion comes into play; again the presumption is that of regularity, not of irregularity, as appellant seems to infer. If there were fraud, conspiracy, or other acts of misfeasance or of malfeasance, it was appellant's duty to declare the same precisely so that the defendants would be enabled to determine the exact nature of the accusation to be faced in court.

■ In this connection may be noted, for purposes of analogy, the recent case of *Arechiga* v. *Housing Authority of the City of Los Angeles,* 159 Cal.App.2d 657 [324 P.2d 973], decided by division two of this court on April 24, 1958. Therein the reviewing court said: "Property acquired in fee simple by a public body for a particular public purpose may nevertheless be diverted to another use. (*Ritzman* v. *City of*

*Los Angeles,* 38 Cal.App.2d 470 [101 P.2d 541], *Reichelderfer* v. *Quinn,* 287 U.S. 315 [53 S.Ct. 177, 77 L.Ed 331, 83 A.L.R. 1429].) . . . The reason underlying this principle is that it enables public bodies to meet changing conditions.''

■ Appellant's contention that the complaint as amended presents a case involving the due process provisions of the Constitution is untenable. There is no statutory provision which requires the giving to taxpayers of notice of a hearing in respect to the selection of a courthouse site. Sections 25080 and 25081 of the Government Code merely require that the selection shall be made at a regular public meeting of the board of supervisors. This was done and was all that the appellant had a right to demand or expect. The due process requirement is not an academic, exacting one in which the citizen or taxpayer may demand a notice or a hearing of his own making. Whatever the requirement may be in other situations, no cogent reason appears why the plaintiff taxpayer herein should receive special notice, or a special hearing, particularly where the matter is one of a discretionary nature. The Supreme Court of-the United States, in the case of *Rindge Co.* v. *County of Los Angeles,* 262 U.S. 700 [43 S.Ct. 689, 67 L.Ed. 1186], with reference to condemnation and notice of a hearing as to adoption of a resolution of necessity by the county, made this statement: ''a hearing thereon is not essential to due process in the sense of the 14th Amendment. . . . The question is purely political, does not require a hearing and is not the subject of judicial inquiry.''

■ Nor is there merit in appellant's argument that respondents' action violated constitutional prohibitions against impairment of contract rights or those protected by the federal civil rights statute. The pleadings are indefinite or silent as to what contract rights the pleader may have had in mind. No contracts are involved save those for courthouse plans and there is nothing to indicate that these were not fulfilled; even a breach thereof would not necessarily involve the principles just mentioned. The building of a courthouse is a matter of statewide concern as appellant alleges, but it does not follow that any taxpayers' rights, contractual or otherwise, have been impinged upon.

The right of a public body to rescind its action and abandon improvement proceedings without other liability than that flowing from a breach of contract has been recognized in various cases, such as *Brooks* v. *City of Gilroy,* 219 Cal. 766 [29 P.2d 212]. This was an action by an engineer to recover for

services rendered in connection with certain improvement work. Although the city had a city engineer, the court held it had the power to appoint an engineer for the improvements in question after declaring the office of city engineer vacant and the contract so made with the second engineer was declared legal. The present controversy, of course, is not an action for breach of contract but one making far more serious charges.

The pleader's bald assertions seeking to predicate liability on vague charges of negligence, wilful neglect of public duty, failure or neglect to take proper precautions to determine the proper site for a courthouse, unwarranted delay, and similar allegations, add little or nothing to the sum total. The purpose of a complaint is to furnish the defendants with certain definite charges which can be intelligently met. Mere general assertions by way of conclusion or those indefinite in character, such as here presented, cannot be deemed sufficient compliance with the long-established rules of pleading.

The same may be said in respect to the employment of such terms as fraud, misrepresentation, bad faith, oppression, malice, and the like, found in appellant's complaints. Use of such terminology cannot cure a failure to point out exactly how or in what manner the defendants have transgressed. Did they do something not authorized by law or accomplish some purpose by other than prescribed and legal methods? The answer is not in appellant's complaints.

There appears to be, rather, an attempt to create a general impression that the defendants' acts, ostensibly complying with law, were, nevertheless, part of a gigantic conspiracy to acquire the Temple Street site for alleged courthouse purposes and thereafter lease the same for profitable parking uses. These are broad and bold assertions, easily made, but not legally sufficient. This is not to say that officials may not or should not be held responsible for their nefarious acts—quite the contrary. The point is that the accuser must place his finger squarely and directly upon whatever dereliction is relied upon. Fraud and conspiracy are actionable, but the mere use of such terms is not enough. The facts constituting bad faith or fraud must be specifically alleged. (*People* v. *Milton*, 35 Cal.App.2d 549 [96 P.2d 159].)

Appellant's claimed cause of action is neither created nor enhanced by the allegations and prayer relating to declaratory relief. While this remedy is a most valuable one in

a proper case, and possessed of considerable latitude, it is by no means a catchall. Without facts other than those here alleged, its application is not called for. Moreover, as was the situation in *Orloff* v. *Metropolitan Trust Co.*, 17 Cal.2d 484, 489 [110 P.2d 396], "all of the acts of which he complains were concluded before his suit was commenced. . . . These allegations do not measure up to the requirements of an action for declaratory relief, and the superior court properly refused to exercise its power to entertain the complaint upon that count. (Code Civ. Proc., §§ 1060, 1061.) . . . a judgment refusing to entertain a complaint for declaratory relief is not reviewable upon appeal except for an abuse of discretion, which is not here shown. (*Cutting* v. *Bryan*, 206 Cal. 254 [274 P. 326].)"

As hereinbefore indicated, the pleader's use of terminology relating to trusts, whether express, implied, or constructive, deals with generalities not disputed, but conversely fails to pin down any specific conduct on defendants' part which will bring into play the principles urged. A cause of action is not created by the mere use of legal, generic, or other terms, and this principle applies to much of the appellant's pleading. The appellant's prayers for injunction, a bill of peace and application of estoppel by judgment, punitive damages, etc., likewise add nothing to the sum total nor do they serve to state a cause of action in the absence of a definitive statement of actionable facts.

It will serve no useful purpose to further discuss the individual words and phrases utilized in appellant's complaints. Rather, the sum total of the variant terminologies employed and the legal significance thereof is important in determining the propriety of the trial court's action. Whatever the language employed and whatever rationalization may be attempted, the over-all picture is that of a blending of indefinite charges and unsupported conclusions which fail to state a cause of action.

Considering the allegations as an entirety rather than piecemeal, and giving the same every reasonable intendment, appellant is here seeking to effect a judicial interference with discretionary powers without a sufficient showing of any abuse of such discretion or other actionable conduct. The attack is rather on the wisdom of the action taken than on its legality. As hereinbefore indicated, a cause of action, if any there be, must arise from something other than an unwise decision. Otherwise than by unsupported inference, no definite cause

of action on any plausible theory stands alleged in any of the five complaints presented, whether considered separately or in combination. The disposition made by the trial court was therefore justified and no abuse of discretion is apparent.

The attempted appeal from the order is dismissed and the judgment is affirmed.

White, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 30, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.