Filed 1/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ARLETTE HAWKINS, | B242769 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC440504) |
| v. | |
| TACA INTERNATIONAL AIRLINES, S.A., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge. Affirmed.

Law Offices of Ellen Lake, Ellen Lake; The Nourmand Law Firm and Michael Nourmand for Plaintiff and Appellant.

Greenberg Traurig, Mark D. Kemple and Karin L. Bohmholdt for Defendant and Respondent TACA International Airlines, S.A.

Squire Sanders (US), Stephen T. Owens and Emily L. Wallerstein for Defendant and Respondent Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V., doing business as Volaris.

DLA Piper, Maria C. Rodriguez and Benjamin M. Gipson for Defendants and Respondents LAN Airlines and LAN Cargo.

_____

In this action for violating Labor Code section 2810,[1] we affirm the judgment (order of dismissal) in favor of defendants and respondents TACA International Airlines, S.A. (TACA), LAN Airlines and LAN Cargo (jointly, LAN), and Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V., doing business as Volaris (Volaris), whose demurrers were sustained without leave to amend.

This litigation began in June 2010, when plaintiff and appellant Arlette Hawkins filed a putative class action complaint alleging wage and hour claims against her former employer, defendant Sereca Security Corp., who is not a party to this appeal. This appeal involves the section 2810[2] claim against TACA, LAN, and Volaris (collectively, the

---

[1]    Unless otherwise indicated, all further statutory references are to the Labor Code.

[2]    Section 2810 (as amended by Stats. 2012, ch. 813, § 1) provides:
"(a) A person or entity shall not enter into a contract or agreement for labor or services with a construction, farm labor, garment, janitorial, security guard, or warehouse contractor, where the person or entity knows or should know that the contract or agreement does not include funds sufficient to allow the contractor to comply with all applicable local, state, and federal laws or regulations governing the labor or services to be provided.
"(b) There is a rebuttable presumption affecting the burden of proof that there has been no violation of subdivision (a) where the contract or agreement with a construction, farm labor, garment, janitorial, security guard, or warehouse contractor meets all of the requirements in subdivision (d).
"(c) Subdivision (a) does not apply to a person or entity who executes a collective bargaining agreement covering the workers employed under the contract or agreement, or to a person who enters into a contract or agreement for labor or services to be performed on his or her home residences, provided that a family member resides in the residence or
                                                                    (Fn. continued.)

2

residences for which the labor or services are to be performed for at least a part of the year.

"(d) To meet the requirements of subdivision (b), a contract or agreement with a construction, farm labor, garment, janitorial, security guard, or warehouse contractor for labor or services shall be in writing, in a single document, and contain all of the following provisions, in addition to any other provisions that may be required by regulations adopted by the Labor Commissioner from time to time:

"(1) The name, address, and telephone number of the person or entity and the construction, farm labor, garment, janitorial, security guard, or warehouse contractor through whom the labor or services are to be provided.

"(2) A description of the labor or services to be provided and a statement of when those services are to be commenced and completed.

"(3) The employer identification number for state tax purposes of the construction, farm labor, garment, janitorial, security guard, or warehouse contractor.

"(4) The workers' compensation insurance policy number and the name, address, and telephone number of the insurance carrier of the construction, farm labor, garment, janitorial, security guard, or warehouse contractor.

"(5) The vehicle identification number of any vehicle that is owned by the construction, farm labor, garment, janitorial, security guard, or warehouse contractor and used for transportation in connection with any service provided pursuant to the contract or agreement, the number of the vehicle liability insurance policy that covers the vehicle, and the name, address, and telephone number of the insurance carrier.

"(6) The address of any real property to be used to house workers in connection with the contract or agreement.

"(7) The total number of workers to be employed under the contract or agreement, the total amount of all wages to be paid, and the date or dates when those wages are to be paid.

"(8) The amount of the commission or other payment made to the construction, farm labor, garment, janitorial, security guard, or warehouse contractor for services under the contract or agreement.

"(9) The total number of persons who will be utilized under the contract or agreement as independent contractors, along with a list of the current local, state, and federal contractor license identification numbers that the independent contractors are required to have under local, state, or federal laws or regulations.

"(10) The signatures of all parties, and the date the contract or agreement was signed.

"(e)(1) To qualify for the rebuttable presumption set forth in subdivision (b), a material change to the terms and conditions of a contract or agreement between a person or entity and a construction, farm labor, garment, janitorial, security guard, or warehouse contractor must be in writing, in a single document, and contain all of the provisions listed in subdivision (d) that are affected by the change.

(Fn. continued.)

3

"(2) If a provision required to be contained in a contract or agreement pursuant to paragraph (7) or (9) of subdivision (d) is unknown at the time the contract or agreement is executed, the best estimate available at that time is sufficient to satisfy the requirements of subdivision (d).  If an estimate is used in place of actual figures in accordance with this paragraph, the parties to the contract or agreement have a continuing duty to ascertain the information required pursuant to paragraph (7) or (9) of subdivision (d) and to reduce that information to writing in accordance with the requirements of paragraph (1) once that information becomes known.

"(f) A person or entity who enters into a contract or agreement referred to in subdivisions (d) or (e) shall keep a copy of the written contract or agreement for a period of not less than four years following the termination of the contract or agreement.  Upon the request of the Labor Commissioner, any person or entity who enters into the contract or agreement shall provide to the Labor Commissioner a copy of the provisions of the contract or agreement, and any other documentation, related to paragraphs (1) to (10), inclusive, of subdivision (d).  Documents obtained pursuant to this section are exempt from disclosure under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).

"(g)(1) An employee aggrieved by a violation of subdivision (a) may file an action for damages to recover the greater of all of his or her actual damages or two hundred fifty dollars ($250) per employee per violation for an initial violation and one thousand dollars ($1,000) per employee for each subsequent violation, and, upon prevailing in an action brought pursuant to this section, may recover costs and reasonable attorney's fees.  An action under this section shall not be maintained unless it is pleaded and proved that an employee was injured as a result of a violation of a labor law or regulation in connection with the performance of the contract or agreement.

"(2) An employee aggrieved by a violation of subdivision (a) may also bring an action for injunctive relief and, upon prevailing, may recover costs and reasonable attorney's fees.

"(h) The phrase 'construction, farm labor, garment, janitorial, security guard, or warehouse contractor' includes any person, as defined in this code, whether or not licensed, who is acting in the capacity of a construction, farm labor, garment, janitorial, security guard, or warehouse contractor.

"(i)(1) The term 'knows' includes the knowledge, arising from familiarity with the normal facts and circumstances of the business activity engaged in, that the contract or agreement does not include funds sufficient to allow the contractor to comply with applicable laws.

"(2) The phrase 'should know' includes the knowledge of any additional facts or information that would make a reasonably prudent person undertake to inquire whether, taken together, the contract or agreement contains sufficient funds to allow the contractor to comply with applicable laws.

(Fn. continued.)

airline defendants), which was added by an amendment in 2012, around the time when Sereca's default was entered. Hawkins's theory is that the airline defendants are responsible under section 2810 for Sereca's alleged violations of wage and hour laws. As stated in *Castillo v. Toll Bros., Inc.* (2011) 197 Cal.App.4th 1172, 1182, "section 2810 authorizes the employees of a services contractor [in certain industries] to sue the party hiring the contractor if the hiring party knowingly pays a contract price insufficient to permit the contractor to comply with the law in performing the contract."

Although Hawkins sued the airline defendants for entering into underfunded contracts, she admits that she has never seen the relevant contracts and has no information concerning their contents. She contends, however, that she may sue first and conduct discovery later to ascertain whether any of the contracts was underfunded. The airline defendants disagree. They contend that because Hawkins failed to allege any facts to show that they knowingly entered into underfunded contracts in violation of section 2810, the demurrers were properly sustained. For the reasons that follow, we agree that the complaint fails to allege sufficient facts to state a cause of action and affirm.

## BACKGROUND

In part I below, we discuss the events leading to the entry of Sereca's default. In part II, we address the amended pleading that added a section 2810 claim against the airline defendants.

---

"(3) A failure by a person or entity to request or obtain any information from the contractor that is required by any applicable statute or by the contract or agreement between them, constitutes knowledge of that information for purposes of this section.

"(j) For the purposes of this section, 'warehouse' means a facility the primary operation of which is the storage or distribution of general merchandise, refrigerated goods, or other products."

5

## I. The Events Leading to the Entry of Sereca's Default

According to Hawkins's first amended complaint, Sereca allegedly failed to: (1) reimburse employees for required uniforms (first cause of action); (2) pay all wages due immediately upon termination (second cause of action); (3) provide complete and correct itemized wage statements (third cause of action); (4) pay all wages due in each pay period (fourth cause of action); and (5) pay overtime wages (fifth cause of action). (Lab. Code, §§ 2802, 201-202, 226, 204, 1194.) Sereca also allegedly violated the unfair competition law (Bus. & Prof. Code, § 17200) (sixth cause of action).

The complaint alleged that Sereca "*had the ability to pay all wages* earned by Former Security Guard Class and Late Pay Class at the time of termination in accordance with Labor Code §§ 201 and 202, but intentionally adopted . . . policies or practices incompatible with the requirements of Labor Code §§ 201 and 202." (Italics added.) Without alleging a dollar amount, the complaint sought on behalf of all similarly situated plaintiffs, the payment of all wages earned and owed, statutory penalties, reimbursement of the cost to purchase the required uniforms, and injunctive relief.

In March 2011, Hawkins allegedly learned that due to financial problems, it was unlikely that Sereca would be able to pay a judgment on a class basis. After receiving this information, Hawkins filed a second amended complaint that added two entities affiliated with Sereca[3] as Doe defendants based on a joint employer theory.

Also in April 2011, the trial court granted the motion of Sereca's attorney, Daniel G. Emilio, to be relieved as counsel due to "irreconcilable differences" with his client. After Sereca failed to substitute new counsel within the allotted time, the trial court struck Sereca's answer and entered its default. However, the court set aside Sereca's default in August 2011, after Emilio was rehired as Sereca's attorney.

---

[3] The Sereca-related entities are Sereca, C.A. and Serenos Responsable Sereca C.A. All references in this opinion to Sereca are intended to include, where appropriate, the Sereca-related entities.

In October 2011, Hawkins moved to certify a class consisting of all Sereca employees in California who held the position of security guard within the class period. The evidence in support of the motion showed that Sereca's only California clients were the airline defendants at Los Angeles International Airport (LAX).

In support of her motion, Hawkins submitted a declaration in which she stated that: (1) she was employed by Sereca from May 2007 to September 4, 2009; (2) she was assigned to work as a security guard at LAX for TACA; (3) she did not receive compensation for all hours worked; (4) she was not reimbursed for the cost of her required uniform (approximately $300); and (5) she did not receive her final paycheck in a timely manner. Hawkins submitted declarations of other prospective class members that described similar violations.

In December 2011, the trial court granted Hawkins's motion for class certification. The trial court found that the plaintiff class was both ascertainable and sufficiently numerous to warrant class treatment; that Hawkins's claims were typical of a class consisting of 271 persons who had worked as security guards for Sereca during the class period; and that common issues predominated as to the primary claims for unreimbursed business expenses, off-the-clock work, failure to pay final wages in a timely manner, and noncompliant wage statements.

In January 2012, Emilio again moved to be relieved as Sereca's counsel based on "irreconcilable differences" with his client. The trial court granted the motion on February 28, 2012. After Sereca failed to obtain new counsel within the allotted time, its answer was stricken and its default was entered on May 8, 2012.[4]

---

**4**   Because the complaint did not allege a specific amount of damages, Hawkins was not eligible to obtain a default judgment in the principal amount alleged in the complaint under the procedure set forth in Code of Civil Procedure section 585, subdivision (a) or (b).

7

## II. Hawkins Sues TACA, LAN, and Volaris Under Section 2810

On February 28, 2012, Hawkins filed a third amended complaint, the operative pleading, which added a seventh cause of action for violation of section 2810 against the airline defendants.

### A. *The Section 2810 Allegations*

The seventh cause of action alleged, for the first time, that Sereca had entered into a contract or contracts with each of the airline defendants, which the defendants knew or should have known lacked sufficient funds to allow Sereca to comply with all applicable local, state, and federal laws or regulations governing the labor or services to be provided. However, the seventh cause of action failed to identify or describe any of the contracts between Sereca and each airline defendant. Instead, the seventh cause of action tracked the statutory language of section 2810 and stated as follows:

"[T]he contracts entered between TACA, VOLARIS, LAN and [SERECA] for security services . . . provided insufficient funds to allow [SERECA] to comply with all applicable local, state, and federal laws or regulations governing the labor or services to be provided. [¶] . . . The routine and systematic failure of TACA, VOLARIS and LAN to provide adequate funds to [SERECA] has predictably resulted in the wholesale disregard and violation of wage and hour laws by [SERECA]. [¶] . . . At each of the times that TACA, VOLARIS and LAN entered into contracts with [SERECA] they have known, or should have known, that each contract did not provide sufficient funds to allow [SERECA] to comply with all applicable local, state, and federal laws or regulations governing the labor or services provided. [¶] . . . As a direct and proximate result of the failure of TACA, VOLARIS and LAN to provide sufficient funds to Defendants in violation of <u>Labor Code</u> § 2810, the employees of [SERECA] have been injured in that the employees have suffered, and continue to suffer, losses related to the use and enjoyment of wages and lost interest on such wages all to [their] damage in [an] amount according to proof at trial. [¶] . . . Pursuant to <u>Labor Code</u> § 2810(g)(1) Plaintiff and other similarly situated employees are entitled to recover their actual damages or $250

8

per employee per violation for an initial violation and $1,000 per employee for each subsequent violation. [¶] . . . Pursuant to Labor Code § 2810(g)(1), Plaintiff and the other similarly situated employees are entitled to reasonable attorney's fees and costs of suit."

### B. The Demurrers to the Seventh Cause of Action

In April and May 2012, the airline defendants separately demurred to the seventh cause of action. Although their demurrers were not identical, they generally argued that it was legally insufficient to bring a section 2810 claim based solely on the language of the statute and without stating any facts to support an allegation that the contracting parties knew or should have known that their contracts were underfunded.

As previously mentioned, it was undisputed that Hawkins filed her section 2810 claim without having seen the contracts or obtaining any information regarding their contents. In opposition to the demurrers, Hawkins stated that she had tried to obtain the relevant contracts from Sereca, but "Sereca indicated that it no longer had possession, custody or control of the contracts." Hawkins argued that as parties to the contracts, the airline defendants were familiar with their terms and, therefore, less specificity in the pleading was required under the rule of liberal construction. (Citing Code Civ. Proc., § 452 ["In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."]; *Bradley v. Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 825 [less specificity is required where the defendants necessarily possess full information concerning the facts of the dispute].)

On May 15, 2012, the trial court sustained the demurrers of TACA and LAN. The trial court stated at the hearing: "There's no indication on the face of the complaint that TACA is or has been an employer of plaintiff." "Neither TACA or LAN CARGO are the employer. I think by definition we start there. They are contractors or contractees, I'm not sure which it is because I don't have a contract, with what appears to be the plaintiffs' employer and paid her money."

9

On May 31, 2012, Hawkins moved for leave to file a fourth amended complaint, which she stated would "clarify the allegations necessary to adequately plead a cause of action for violation of Labor Code § 2810" by: (1) alleging that Sereca was her sole employer; (2) eliminating the joint employer allegations against the Sereca-related entities; and (3) alleging that section 2810 was intended to protect employees of the security guard industry by allowing them to sue the hiring entity that contracted with their employer, if their employer failed to pay all wages earned and owed. On June 26, 2012, the trial court denied the motion. Accordingly, the third amended complaint remained the operative pleading.

On June 19, 2012, the trial court heard Volaris's demurrer, which was "substantively identical" to the demurrers of TACA and LAN. Volaris argued that "one of the key issues is that . . . plaintiff failed to plead that she performed any services for Volaris at all. And the statute is specific in that it states it must be pled and proved or it must be pleaded and proved that an employee was injured as a result of a violation of a labor law or regulation in connection with the performance of the contract or agreement. And that's just simply not alleged at all."

In opposition, Hawkins argued that "fact pleading" was not required by the statute. Hawkins contended the airline defendants had failed to establish that "an employee would have access to private contracts between the employer and its customers." Hawkins claimed that "all an employee has to do is allege that his or her employer contracted with a customer, a client; the contract was underfunded. Then there is a presumption that, if there is a written agreement between the customer and the employer that satisfies all the requirements set forth in Labor Code section 2810, subsection (d), then they're off the hook. It's easy. If they have a contract that complies with Labor Code section 2810, show it to me. I'll be the first person to dismiss them. I don't want them in the case. If Labor Code section 2810 does not apply to them, show me the document. Show me the document that complies with Labor Code section 2810, subsection (d)."

After sustaining Volaris's demurrer, the trial court entered a judgment of dismissal in favor of the airline defendants. This timely appeal followed.

## DISCUSSION

### I.     Standard of Review

"'A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal.*, *Inc*. (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid*.)' (*Villari v. Mozilo* (2012) 208 Cal.App.4th 1470, 1477.)" (*So v. Shin* (2013) 212 Cal.App.4th 652, 661-662.)

### II.     Hawkins's Contention That She Could Not Obtain the Contracts Prior to Suing the Airline Defendants Is Incorrect

In her opening brief, Hawkins asserts that prior to suing the airline defendants, she tried but could not obtain the relevant contracts from Sereca and one of the airline defendants. She then concludes, "Thus, plaintiff was necessarily limited to making general allegations in support of the claim under section 2810."[5]

---

[5]     In her reply brief and accompanying request for judicial notice of August 30, 2013, which we granted, Hawkins asserts, for the first time, that after the airline defendants filed their respective demurrers, she served each airline with a request to produce their respective contracts with Sereca for security guard services at LAX during the class period. Hawkins also states in her reply brief that none of the airline defendants

(Fn. continued.)

11

Our difficulty with this contention is that it ignores the existence of other means of obtaining the contract from Sereca's clients short of suing them. For example, Code of Civil Procedure section 2020.010 provides: "(a) Any of the following methods may be used to obtain discovery within the state from a person who is not a party to the action in which the discovery is sought: [¶] (1) An oral deposition under Chapter 9 (commencing with Section 2025.010). [¶] (2) A written deposition under Chapter 11 (commencing with Section 2028.010). [¶] (3) A deposition for production of business records and things under Article 4 (commencing with Section 2020.410) or Article 5 (commencing with Section 2020.510). [¶] (b) Except as provided in subdivision (a) of Section 2025.280, the process by which a nonparty is required to provide discovery is a deposition subpoena."[6]

---

produced the requested contracts and although TACA and LAN objected to the document request after their demurrers were sustained, Volaris never responded.

Even assuming all of the above is true, Hawkins has failed to explain how this will help her position. The record fails to indicate that Hawkins ever attempted to compel a response to her discovery request and it is too late to do so now. The fact remains that, as we discuss in the body of the opinion, Hawkins could have sought the contracts from the airline defendants by conducting third party discovery prior to suing them.

[6] See also Code of Civil Procedure, section 1985, which states:
"(a) The process by which the attendance of a witness is required is the subpoena. It is a writ or order directed to a person and requiring the person's attendance at a particular time and place to testify as a witness. It may also require a witness to bring any books, documents, electronically stored information, or other things under the witness's control which the witness is bound by law to produce in evidence. When a county recorder is using the microfilm system for recording, and a witness is subpoenaed to present a record, the witness shall be deemed to have complied with the subpoena if the witness produces a certified copy thereof.

"(b) A copy of an affidavit shall be served with a subpoena duces tecum issued before trial, showing good cause for the production of the matters and things described in the subpoena, specifying the exact matters or things desired to be produced, setting forth in full detail the materiality thereof to the issues involved in the case, and stating that the witness has the desired matters or things in his or her possession or under his or her control.

(Fn. continued.)

12

Even if we assume that Hawkins had tried informally to obtain one or more contracts from an airline defendant prior to filing her section 2810 claim, there is no indication that she attempted to utilize any formal discovery methods such as those listed in Code of Civil Procedure section 2020.010.  This is a significant omission.  Given that Hawkins had requested the contracts from Sereca during discovery,[7] she was aware of their relevance to this litigation.  But after Sereca informed Hawkins that it no longer possessed the contracts, she could have but did not seek to obtain them through third party discovery prior to filing her section 2810 claim.

If Hawkins had requested the contracts through third party discovery prior to suing the airline defendants, she presumably would have obtained them.  There is no indication in the record that the airline defendants no longer possess the contracts.  And upon obtaining the contracts, Hawkins could have ascertained whether they were underfunded.  The record therefore does not support her contention that she "was necessarily limited to making general allegations in support of the claim under section 2810."

## III.    The Rule of Liberal Construction Does Not Eliminate the Factual Gaps in the Seventh Cause of Action for Violation of Section 2810

Hawkins contends that because she was not privy to the contracts or agreements between the airline defendants and her employer, she is excused under the rule of liberal

"(c) The clerk, or a judge, shall issue a subpoena or subpoena duces tecum signed and sealed but otherwise in blank to a party requesting it, who shall fill it in before service.  An attorney at law who is the attorney of record in an action or proceeding, may sign and issue a subpoena to require attendance before the court in which the action or proceeding is pending or at the trial of an issue therein, or upon the taking of a deposition in an action or proceeding pending therein; the subpoena in such a case need not be sealed.  An attorney at law who is the attorney of record in an action or proceeding, may sign and issue a subpoena duces tecum to require production of the matters or things described in the subpoena."

[7]    On appeal, Hawkins moved to take judicial notice of its discovery request in which Sereca was asked to produce the relevant contracts, and Sereca's response that it no longer possessed the contracts.  The motion for judicial notice is granted.

construction from making any detailed factual allegations concerning those contracts or agreements. (Citing *Okun v. Superior Court* (1981) 29 Cal.3d 442, 458 [slander can be charged by alleging, based on information and belief, the substance of the defamatory statement]; *Burks v. Poppy Construction Co.* (1962) 57 Cal.2d 463, 474 [allegation that housing accommodations were "publicly assisted" was not an improper conclusion of law]; *Jackson v. Pasadena City School Dist.* (1963) 59 Cal.2d 876, 879 [allegations of racial segregation in the schools and gerrymandering of school district's boundaries were not improper conclusions of law]; *Semole v. Sansoucie* (1972) 28 Cal.App.3d 714, 719 [wrongful death allegations tracking the language of the statute were not improper conclusions of law].)

The airline defendants contend, on the other hand, that a complaint must contain at minimum "[a] statement of the facts constituting the cause of action." (Code Civ. Proc., § 425.10.) They argue that the rule of liberal construction is insufficient to remedy the complaint's failure to allege any facts in support of the section 2810 claim. They contend that "facts in support of each of the requirements of a statute upon which a cause of action is based must be specifically pled." (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 604.) They argue that "where the Legislature intends to permit an element of a claim to be alleged by reference to mere legal conclusions, it does so expressly. (See Code Civ. Proc., §§ 456-460 [detailing certain types of claims and explaining where general allegations may be made and specific facts need not be pled].)" They point out that in *Melton v. Boustred* (2010) 183 Cal.App.4th 521, the plaintiffs' allegations that the defendant knew or should have known that his actions would expose the plaintiffs to an unreasonable risk of bodily harm were more fact specific than those in this case and were rejected by the court as "wholly conclusory." (*Id.* at p. 536.)

We agree with the airline defendants that simply parroting the language of section 2810 in the complaint is insufficient to state a cause of action under the statute. We find the case of *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396 (*Carter*) instructive. There, the plaintiffs alleged a hospital had committed acts that qualified as elder abuse. The trial court sustained the hospital's demurrer to the elder

14

abuse claim, finding that the allegations did not constitute neglect within the meaning of the Elder Abuse Act (Welf. & Inst. Code, § 15600 et seq.). (*Carter* at p. 402.). In affirming the trial court's order, the appellate panel wrote: "With respect to the conduct actually attributed to the Hospital—failure to treat Grant's pressure ulcers, administer prescribed antibiotics or stock the crash cart; false documentation; and purposefully inadequate testing for medications—plaintiffs contend their allegations the Hospital acted 'recklessly' or 'fraudulently' suffice to cause 'the acts to rise to the level of neglect' under the Elder Abuse Act. We disagree. When we review a ruling on a demurrer, we do not assume the truth of contentions or conclusions of fact or law, such as those contained in plaintiffs' pleadings. [Citations.] 'Facts, not conclusions, must be pleaded.' [Citation.] Further, where, as here, statutory remedies are invoked, the facts 'must be pleaded with particularity.' [Citation.] Accordingly, plaintiffs' '[u]se of such terminology [as fraudulently and recklessly] cannot cure [the] failure to point out exactly how or in what manner the [Hospital has] transgressed.' [Citation.]" (*Id.* at p. 410, fn. omitted.)

So it is here. In order to state a cause of action under section 2810, Hawkins must do more than simply allege that "[a]t each of the times [the airline defendants] entered into contracts with [Sereca] they have known, or should have known, that each contract did not provide sufficient funds to allow [Sereca] to comply with all applicable local, state, and federal laws or regulations governing the labor or services provided." Echoing the concerns of the airline defendants, it cannot be that a plaintiff employed in the industries covered by section 2810 who has not been paid the wages he or she is owed can state a claim under the statute against every entity who entered into a contract with the employer simply by utilizing a pair of scissors and a paste pot and transferring the language of the statute to a form complaint. Such a pleading "'cannot cure [the] failure to point out exactly how or in what manner the [airline defendants have] transgressed.'" (*Carter*, *supra*, 198 Cal.App.4th at p. 410, quoting *Lavine v. Jessup* (1958) 161 Cal.App.2d 59, 69. See also *Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 81 [plaintiff may not sue multiple defendants on speculation that their conduct caused harm

15

and "thereafter try to learn through discovery whether the speculation was well-founded"].)

Although no California state court has addressed this particular statute, a federal district court recently decided a similar case involving section 2810 and found, as we do, that the pleading did not allege sufficient facts to state a claim. (*Rojas v. Brinderson Constructors*, *Inc.* (C.D. Cal. 2008) 567 F.Supp.2d 1205, 1208-1209 (*Rojas*).) The court in *Rojas* stated: "Under Section 2810(a), an entity is liable 'where the entity knows or should know that the contract or agreement [it entered] does not include funds sufficient to allow the contractor to comply with all applicable local, state, and federal laws.' This language unambiguously predicates an entity's liability on its entering into a contract with actual or constructive knowledge of the insufficiency of the funds. Thus, in order to state a claim against the Refinery Defendants, Plaintiffs must not merely allege that Brinderson violated applicable labor laws . . . but also that the Refinery Defendants knew or should have known that their contracts with Brinderson did not include sufficient funds for Brinderson to comply with those laws." (*Ibid.*)

The court in *Rojas* further stated: "Plaintiffs' bare allegations are also inconsequential; they neither speak to the alleged under-funding of the contracts nor the Refinery Defendants' knowledge thereof, which, after all, are the necessary elements of a Section 2810 claim. Indeed, the court has found but a single allegation in the [second amended complaint] relevant to the 2810 claim. Specifically, Plaintiffs allege the Refinery Defendants 'knew or should have known that the contracts did not include funds sufficient to comply with all applicable labor laws since [Brinderson] was the lowest bidder for this work.' . . . This allegation is futile because it rests on a wholly untenable (and absurd) inference. [¶] While the court does not purport to be an authority on the construction industry, it is sufficiently qualified to note that, ordinarily, the lowest bidder is also the winning bidder—that is the very nature of the process. . . . Without digressing into the subtleties of the matter, the court would be remiss were it to impose a presumption of wrongdoing on an entity merely for accepting the lowest of several bids. The grievous implications of Plaintiffs' proposition are readily apparent and require no

16

explication. Suffice it to say, this allegation, without more, does not raise Plaintiffs' right to Section 2810 relief above the speculative level. *See* [*Bell Atlantic Corp. v.*] *Twombly* [(2007) 550 U.S. 544,] 127 S.Ct. [1955,] 1965. [¶] Finally, Plaintiffs' allegations themselves compel the conclusion that the 2810 claim is purely speculative. Among other things, Plaintiffs concede throughout their papers that they have not seen the contracts at issue, yet speculate that those contracts neither include sufficient funds for Brinderson to comply with applicable labor laws nor the necessary elements to entitle the Refinery Defendants to Section 2810(b)'s rebuttable presumption. . . . And, were that not enough, Plaintiffs' rampant guesswork never once accounts for, nor differentiates between, the separate contracts that Brinderson entered into with each of the six different Refinery Defendants. Simply, Plaintiffs may not proceed with this claim based on such vacuous allegations." (*Rojas*, *supra*, 567 F.Supp.2d at pp. 1209-1210, fn. omitted.)

In this case, the complaint's allegations are inconsistent with a section 2810 claim that the contracts were underfunded. As previously noted, the complaint alleged that Sereca "*had the ability to pay all wages* earned by Former Security Guard Class and Late Pay Class at the time of termination in accordance with <u>Labor Code</u> §§ 201 and 202, but intentionally adopted . . . policies or practices incompatible with the requirements of <u>Labor Code</u> §§ 201 and 202." (Italics added.) If Sereca had the ability to pay all wages earned by the plaintiff classes, the contracts were <u>*not*</u> underfunded. Accordingly, the allegations in *Rojas*, which were held to be legally insufficient to state a claim under section 2810, were actually stronger than those alleged in the present complaint.

17

## DISPOSITION

The judgment (orders of dismissal) is affirmed.  The airline defendants are entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                        SUZUKAWA, J.

We concur:


EPSTEIN, P. J.


MANELLA, J.


18